H. N. BENNETT, et al., v. WM. WOLVERTON, et al.

1. CH. 137, LAWS OF 1877, *Valid.* Chapter 137, Laws 1877, providing for interpleas, is constitutional and valid, and applies even where the property attached is real estate.

2. ———— *Interplea; Jury.* Where real estate is attached and a third party interpleads, claiming title to the attached property, the issue to be tried is equitable, and not one in which either party is entitled to a jury as a matter of right.

3. DEED ABSOLUTE IN FORM, *Treated as a Mortgage; Error.* Where a debtor conveys property by a deed absolute in form, but intended solely as security, *held,* that courts will treat this as a mortgage, not only upon his application, but also upon the application of his creditors, and that he has an interest in the property which may be seized under an attachment; and *held,* further, that upon the facts in this case, the deed from defendant Wolverton to the interpleader was intended simply as security, and that the district court erred in adjudging the title of the interpleader to be a fee simple absolute, and in quieting it against the attachment proceedings.

*Error from Bourbon District Court.*

IN an action brought by *Bennett, Carter & Co.*, against *Wm. Wolverton & Co.*, upon an account, certain lands situate in the counties of Bourbon and Linn were attached.    December 16, .1878, one *Reuben Laycock* filed an interplea in the action, alleging that he was the owner in fee of the lands attached, and praying that his rights in the same might be determined and adjudicated ; that said property might be discharged from said attachment; and that he might recover his costs of the plaintiffs.    Trial by the court. upon the interplea, at the September Term, 1879, and findings and judgment for the interpleader.    The plaintiffs bring the case here.    The nature of the action, and the facts, appear in the opinion.

*Eugene F. Ware,* for plaintiffs in error.
*Poor & .Millspaugh,* for defendant in error Laycock.

The opinion of the court was delivered by

BREWER, J.: The firm of Bennett, Carter & Co., plaintiffs in error, ( plaintiffs below,) brought suit in Bourbon county, Kansas, against the firm of Wm. Wolverton & Co., upon a book account of about $1,800.    Both Bennett, Carter & Co. and Wm. Wolverton & Co. were non-residents of Kansas.    Certain lands in Bourbon and Linn counties, Kansas, were attached;. publication summons was had; Wolverton & Co. made no appearance, and at the December term of the district court of Bourbon county, 1878, the case stood in default.    Before any judgment was rendered in the case, Reuben Laycock filed what is denominated by the Session Laws of 1877, ch. 137, p. 187, an interplea.    This interplea, filed December 16, 1878, alleged that Reuben Laycock was the "owner in fee" of the lands attached, describing them, and concluded with the following prayer: " Wherefore, he asks that his rights in the same may be determined and adjudicated by this court, and that said property be discharged

from said attachment, and he may recover his costs of the plaintiffs herein."

No judgment has ever been rendered in the original action against Wolverton & Co. The land attached was an undivided half-interest in 320 acres in Bourbon county and an undivided half-interest in 800 acres in Linn county, (attached by order issuing from Bourbon county.) To the interplea the plaintiffs answered with a general denial; and further, that the said Laycock claimed under two deeds from defendant Wolverton, who was the former owner, and that said deeds were fraudulently made, setting up the facts, and that Laycock had never been in possession of the land. A trial was had upon the interplea, by the court without a jury, and special findings of fact were made. By the findings, the land was discharged from the attachment; the title thereto quieted in the said interpleader; the title of the interpleader pronounced a fee simple absolute; and judgment for costs awarded against the plaintiffs. A motion to set aside the findings and judgment, and for a new trial, was duly filed, overruled, and exceptions taken.

Three or four questions are presented by counsel for our consideration. And first, it is claimed that the act under which these proceedings were had is unconstitutional in this, that the subject is not clearly expressed in the title. The title is, "An act supplemental to an act entitled 'An act to establish a code of civil procedure,' being an act to provide for interpleas in certain cases," and the act provides that any person claiming property, money, etc., attached, may interplead in the cause. The argument is, that the proceeding is exactly the opposite of an interplea. We quote from counsel's brief: "An interplea is a claim that the pleader making it, *does not* own the property in controversy, and that one of two other persons *does own it.* The case at bar is, that the pleader *does* own the property, and that neither one of the two other persons *owns it.* The action which the legislature designed is just exactly the opposite of an interplea. (See Abbott's and Bouvier's Dicts., *Interplea.*)"

We think counsel is mistaken. At the common law it may be true that the intervention of a third party was at the instance of the defendant, and in this respect the interpleader of the common law differs from the intervention of the civil law, which was at the instance of the third party who claimed an interest adversely to both parties to the suit. But still the idea of interpleading was that some one beside the parties to the original action claimed rights in the property, and he was called upon to assert his rights or forfeit them. At law, a defendant sued might disclaim, and call upon this third party to assert his rights. In equity, a party having a fund or other property in his hands might summon the various claimants thereto to litigate their several rights. In each case the idea was of casting the litigation upon other parties than the one moving for the interplea. Now this statute, recognizing the underlying idea, simply provides for the practice which shall govern. Instead of leaving the option to the defendant, it gives to a party claiming rights the privilege on his own motion of coming into the cause and asserting those rights. It thus incorporates a wholesome provision of the practice under the civil law. But this change of practice does not destroy the substance of the proceeding. It is still interpleading.

Again, it is urged that the old doctrine of interpleading applied simply to personal property, and involved a disclaimer by the party moving for the interplea of any rights of his own, while here real estate alone is attached and the defendant makes no disclaimer. The statute reads that "any person claiming property, money, effects or credits attached, may interplead in the cause," etc. Now the word property in its ordinary acceptation includes all property, both real and personal. By statute it is made equally inclusive. (Comp. Laws 1879, p. 920, §1, clause 10.) When used by the legislature it should therefore receive this meaning, unless the context indicates its use in a different and more limited sense. It may be said that an interplea is unnecessary as to real estate, that the property cannot be

removed beyond the jurisdiction of the court, and that a decree bars no rights but those of the parties to the action. The interpleader may without interplea protect his rights against any pretense of title conveyed by a decree to which he is not a party. This doubtless is true, and yet an interpleader may desire and may be benefited by a decree declaring his rights before the close of the pending litigation. The litigation, even though it casts no legal cloud upon his title, will often prevent his sale of the property or his obtaining upon a sale the full value. While his legal rights may not be disturbed, the actual present value of the property to him may be reduced. The fact that other remedies may be open to him is no reason for limiting the ordinary and statutory meaning of language to deprive him of this remedy. This very case illustrates the thought. The pendency of these attachment proceedings would naturally interfere with sales. A purchaser would look to the contingency of a law suit, and would reduce his bid by his estimate of the cost and risk of such law suit. By this act the legislature has provided a speedy remedy, and we ought not to restrict the scope of the statute on the theory that without it the party has another remedy. That no disclaimer is made by plaintiff or defendant, is no ground for limiting his right to protection. The statute makes no disclaimer essential, but gives to the interpleader an absolute right to intervene for his own protection.

Another objection is, that a trial by jury was refused. But the statute gives a right to a jury only in "actions for the recovery of money or of specific real or personal property." (Comp. Laws 1879, p. 636, § 266.) This was neither, but rather a proceeding in the nature of an action to quiet title. (*McCardell v. McNay*, 17 Kas. 433.)

A final allegation of error is, that the findings and conclusion of the court are against the weight of evidence. The undisputed facts are, that in 1873, the defendants borrowed $1,000 of a party named Chambers, and that Laycock, the interpleader, signed the note therefor as security; that this

loan was continued, and was still in existence at the time of the trial herein; that in November, 1877, defendant Wolverton deeded these lands to Laycock. The only question is, whether this conveyance, absolute upon its face, was in fact absolute, or in the nature of a mortgage and as security. Upon this question the testimony is substantially in deposition, and therefore is reviewable by us with less presumption in favor of the conclusion of the district court. We have examined this testimony with care, and are compelled to differ from the learned judge who tried this case. It seems to us that this conveyance was only as security to Laycock, and was so understood and intended by the parties. It would unnecessarily prolong this opinion, to recapitulate the testimony. Some salient points may be noticed. The debt to Chambers has not been paid. Wolverton has not been released, nor any change in liability proposed to or accepted by Chambers. Laycock admits having told Wolverton, a few months after receiving the conveyance, that if he would find a purchaser, he might have all he obtained over and above this debt. This intervention in the suit was commenced without any actual knowledge thereof by Laycock, but at the instance of Wolverton, under the general direction of Laycock that he must look after the matter, and with the expectation that he would pay all expenses, including the attorney's fees. He made no inquiries of any one but Wolverton as to the value of the land before receiving the conveyance, and that although he was personally acquainted with the owner of the other undivided half. Two witnesses testify that he spoke of receiving this land as security. Indeed, his whole conduct by his own testimony is not that of a man who had become and is the absolute owner of property situate at a remote distance, and by the care or sale of which he hopes to make profit, but rather of one who has taken a conveyance of such property as security, and looks to the debtor and owner to protect the interests of both. It seems to us clear, upon the showing in this case, that if Wolverton should tender to Laycock the amount of Cham-

bers's debt and interest, a court of equity, looking back of the form of the substance of the transaction, would be compelled to hold this conveyance to have been only in the nature of a mortgage and as security, and to decree a reconveyance. Wolverton's creditors have equal rights. His conveyance, a mortgage so far as he is concerned, is only a mortgage so far as they are concerned.

Counsel for defendants in error contend that no issue was raised by the pleadings as to whether this conveyance was a mortgage; that the only issue was, whether it was fraudulent or not. Hence they claim that as the testimony does not show the transaction fraudulent, the judgment must be affirmed. We do not so understand the scope of the pleadings. The general allegation in the interplea is, that the interpleader is the owner in fee of the lands attached. The answer is, a general denial, and an allegation that the conveyance was fraudulent. The evident purpose of the testimony was to show that this conveyance was only as security, and no attempt was made to deny the fact of Wolverton's indebtedness to Chambers, or that Laycock was indorser on the note. The findings of the court are, that the interpleader holds the title in fee simple absolute, and the decree discharges the land from the attachment. We think, under the general allegations of the pleadings, testimony was competent to show that this conveyance apparently in fee was only in fact a mortgage, and that the grantor had an equity in the lands which could be reached and sold under an attachment.

There being no other question in the case, the judgment of the district court will be reversed, and the case remanded for a new trial upon the interplea.

All the Justices concurring.