FREDERICK HUBBARD *et al.* v. ERNEST CHENEY *et ux.*

No. 14,985. (91 Pac. 793.)

SYLLABUS BY THE COURT.

1. MORTGAGES—*Deed to Secure Purchase-money—Parol Evidence.* A deed purporting to convey land to a husband and wife jointly, where the wife is named as a grantee to secure payment of a sum of money which she loans to her husband to make up the purchase-price of the land, is, as to the wife, no more than a mortgage; and when the loan is paid her interest terminates and his title becomes clear and complete, and the fact that the deed was intended to operate as a mortgage may be shown by parol evidence.

2. EVIDENCE — *Declarations Explanatory of Possession and Ownership.* In a controversy between the heirs of such grantees as to whether the deed was in fact a mortgage the declarations of the husband at the time of the purchase and while he was in possession of the land, explanatory of the possession and of the rights claimed in the land, are competent evidence.

3. —— *Declarations Made in Letters—Authenticity of the Documents.* Declarations of that character included in letters shown to have been actually written while the declarant was in possession of the land may be received in evidence although they do not clearly show whether or when the letters were received by the one to whom they were addressed.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed July 5, 1907. Affirmed.

*J. B. Larimer,* and *T. F. Garver,* for plaintiffs in error.

*J. J. Schenck,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Frederick R. Hubbard, Leverett W. Hubbard and Belle Hubbard Ransom, cousins and only surviving heirs to Jennie E. Cheney, against Ernest and Maud Cheney to recover an eighty-acre tract of land in Shawnee county. Henry W. Cheney was the husband of Jennie E. Cheney. In 1879 Henry W. Cheney purchased the land in controversy for $1600, and $300 of the purchase-price was furnished by his wife, Jennie E. Cheney. Both husband and wife were named as grantees in the deed of conveyance.

In May, 1904, Henry W. Cheney executed a will, leaving all of his estate to Jennie E. Cheney, his wife, and in one of the clauses stated that it was his desire that his wife should remember his nephew, Ernest Cheney, when she had no further use for the property, and make such provision for him as she thought just and equitable. About a month later Jennie E. Cheney made a will, which contained a number of specific devises and bequests, and left the residue of the estate to her husband. In her will it was provided:

"It is also my desire that in case of the death of my husband, Henry Warren Cheney, while I am still living, that his estate shall go to Ernest and Maud Cheney. It is my express desire that my cousin Charles

E. Hubbard, his wife and children, are not to receive anything from my estate. . . . All of the residue of my estate, real, personal and mixed property, I give, devise and bequeath to my husband, Henry Warren Cheney, with no conditions or restrictions, having full confidence that when he shall have no further use for the property he will remember my cousins named in paragraph two of my will [being the plaintiffs], and make such provision and distribution of whatever remains of my estate among said cousins as to him may seem just and equitable."

On June 14, 1904, Henry W. Cheney died, and eighteen days later his wife passed away. The will of each was duly probated, and the validity of neither has never been questioned.

The plaintiffs insist that they have a perfect title to the land; that the deed of 1879 to Henry W. Cheney and Jennie E. Cheney created an estate by the entirety; that when Henry W. Cheney died his surviving wife became the absolute owner; and that at her death it necessarily went to the plaintiffs, as the residuary legatee under the will was dead, and, the land not having been disposed of by will, and Charles E. Hubbard, one of her four cousins, having been expressly excluded by the will, the three remaining cousins inherited the property.

On the other side it is contended that the deed, although executed jointly to the husband and wife, was a mere security to the wife for the $300 which she had advanced toward the purchase-price, and that the wife merely held the property in trust until the repayment of the borrowed money; that when the money was repaid the husband became the sole owner of the property, and under the wills of both husband and wife it passed to the defendants.

Whether the naming of Jennie E. Cheney in the deed was intended as a conveyance to her or only as a means of securing the payment of the money borrowed from her was the principal question in the trial of the

cause.   The following interrogatories were submitted and answered by the jury:

"(1)  Ques. Did Henry W. Cheney purchase the real estate in controversy about 1879?  Ans. Yes.

"(2)  Q. If you answer question No. 1 in the affirmative, then you may state whether or not Jennie E. Cheney, his wife, loaned him $300 or any other amount with which to make the purchase.  A. Yes.

·"(3)  Q. If you answer question No. 2 in the affirmative, then you may state whether or not there was an arrangement, agreement or understanding between Henry W. Cheney and Jennie E. Cheney, his wife, at the time of said purchase, that the title of the real estate should be taken in the name of Henry W. Cheney and Jennie E. Cheney jointly for the purpose of securing Jennie E. Cheney in the money she had loaned to Henry W. Cheney.  A. Yes."

In addition to the special findings the jury found generally in favor of the defendants, and upon these findings judgment against the plaintiffs was given. Plaintiffs contend here that the conveyance to the husband and wife jointly created an estate by the entirety, which could only be devested by a conveyance or by a written contract legally made.  It is well settled that a deed to land absolute on its face and taken as a security is no more than a mortgage.  If the land in question was purchased by Henry W. Cheney, and Jennie E. Cheney was only named as a grantee to secure the payment of the $300 loaned to her husband to make up the purchase-price, she would only hold in trust for her husband, and when her loan was paid her interest would cease and his title become clear and complete.  It was ·competent, then, to show the resulting trust—that the deed was intended to operate as a mortgage—by parol evidence; and the rule applies where the instrument is in form a joint deed the same as if it had been made to Mrs. Cheney alone.  Equity looking back of forms to the substance of things regards the transaction as the parties themselves regarded it, namely, the giving and taking of security

for borrowed money. The purpose of the parties in having the deed made to her, and that it was intended as a mere security, which had been discharged, could be proved without writings or records. (*Moore v. Wade*, 8 Kan. 380; *Glynn v. Building Association*, 22 Kan. 746; *Bennett v. Wolverton*, 24 Kan. 284; *McDonald & Co. v. Kellogg, Trustee*, 30 Kan. 170, 2 Pac. 507; *Marsh v. Davis*, 33 Kan. 326, 6 Pac. 612; *Hutchison v. Myers*, 52 Kan. 290, 34 Pac. 742.)

It is claimed, however, that the evidence received was insufficient for that purpose, and further that the court admitted testimony that was incompetent. Objections were unsuccessfully made to the admission of letters written by Henry W. Cheney to his wife and sister about the time the land was purchased, and also to declarations by him and his wife respecting the purchase and ownership of the land, some of which were made long after the purchase but during their possession of the land. These rulings are not good grounds for a reversal of the judgment. The declarations of persons in possession of real property which illustrate the character of their possession and explain their claims of ownership are admissible to show the character and extent of their claims. (*The State v. Gurnee*, 14 Kan. 111.) The rule has been applied in cases where the possession and ownership of personal property was in controversy. (*Stone v. Bird*, 16 Kan. 488; *Reiley v. Haynes*, 38 Kan. 259, 16 Pac. 440, 5 Am. St. Rep. 737.)

In an action of ejectment by the grantee against the heirs of the grantor, where the question was whether a deed absolute on its face was intended as a mortgage, the supreme court of Indiana held that the declarations of the grantor while in possession of the land, explanatory of the possession and of the rights claimed in the land, might be received in evidence. It was also held that the declarations need not have been made while the claimant was actually on the land, but that it was sufficient to establish their competency to show

that they were made in connection with some act relating to the character of the possession and evidencing ownership.    To that end the declarations of the deceased grantor while negotiating for buildings and insurance and while making improvements were held to be admissible.    (*Creighton v. Hoppis et al.*, 99 Ind. 369.    See, also, *Bennett v. Camp*, 54 Vt. 36; *Maus v. Bome*, 123 Ind. 522, 24 N. E. 345; *McDaneld v. McDaneld et al.*, 136 Ind. 603, 36 N. E. 286; *Fyffe v. Fyffe*, 106 Ill. 646; *Duffey v. Presbyterian Congregation of Bellefonte*, 48 Pa. St. 46; *Stockton Sav. Bank v. Staples*, 98 Cal. 189, 32 Pac. 936; *Kingsford v. Hood*, 105 Mass. 495; 3 Wig. Ev. § 1779; 24 A. & E. Encycl. of L. 690.)

The letters written by Henry W. Cheney to his wife and sister about the time of the purchase of the land were competent evidence in the case, not to show that the statements contained in them were true, but to illustrate and explain the accompanying acts of purchase and possession.    One of them, it is true, had very little in it that was material to the case, but its weight and force in showing that the title was in the husband and that the wife only held a lien on the land was for the determination of the jury.    There is no force in the objection that it was not shown that the letters were mailed by Henry W. Cheney or that his wife ever received or saw them.    They were identified as the letters of Henry W. Cheney, were shown to be in his handwriting, and to have been in the possession of Mrs. Cheney.    The fact that she received the letters or the time of their reception is not as important as if the letters had been offered to show a contract or some like purpose.    Since they were offered to illustrate and qualify the purchase and possession of the land, it is only important that they be shown to have accompanied the acts of purchase and possession, and hence it is immaterial whether they were received and acted upon by Mrs. Cheney.

The oral declarations of Henry W. Cheney while he

was in possession, testified to by a number of witnesses, were admissible under the rule stated. The declarations made by Mrs. Cheney while living on the land, to the effect that she had no title in the land and that the only interest she ever had was a lien thereon for the $300 loan, were declarations against interest, and were therefore admissible under another rule. Some of the statements given in evidence were rather remote from the question in issue, and some of them were immaterial, but we do not regard their admission to have been prejudicial or to furnish cause for reversal.

The judgment of the district court is affirmed.