JOSEPH A. HUDSON *et al., Appellees,* V. OTTO C. HERMAN, *Appellant.*

No. 16,009.

### SYLLABUS BY THE COURT.

1. TAX DEED—*Finding that Purchaser Paid Taxes as Agent Supported by Evidence.* In this case it is held the evidence justifies a finding that a man who took a tax-sale certificate and tax deed of a tract of land and afterward continued to pay taxes did so as the agent and for the benefit and protection of the owner, who was insane; and that he took that method of paying the owner's taxes on the one hand and of protecting his advancement on the other.

2. —— *Proof of Agency — Admissibility against Grantee's Heirs—Authority of Agent—Ratification by Heirs of Landowner.* In such a case the agency of the grantee in the tax deed may be proved against his heirs claiming title by his conduct and by circumstances. It is not necessary that he should have been formally appointed as agent; he may have intervened voluntarily and may have used his own funds; and the heirs of the landowner, who because of her insanity was incapable of expressing recognition of the agency while she was alive, may accept and adopt the services rendered.

3. EVIDENCE—*Book Required by Law to be Kept—County Treasurer's Tax-receipt Book.* The statutes require the county treasurer to keep a just and true account of all moneys received by him, and whenever he receives any tax to give a receipt therefor. They do not prescribe the kinds of account

books he shall keep. *Held,* that any book essential or convenient for the purpose will suffice, and any such book officially adopted and used falls within the requirement of the law. *Held,* further, that a tax-receipt stub book which is a part of the records in the treasurer's office and which shows payments of taxes, the amounts of such payments, the years for which they were made and the persons for whom and by whom they were made is admissible in evidence as a book required by law to be kept.

4. TITLE—*Resulting Trust—Heirs of Agent—Lien for Taxes.* The heirs of the agent referred to in paragraph 1 inherit no better title than he possessed, which is a naked legal title with a lien for taxes; and such title will be held in trust for the successors in interest of the principal, subject only to the lien.

5. PURCHASER *Pendente Lite—Agreement to Defend Pending Suit—Innocent Purchaser—Recording Act.* The heirs of the principal referred to brought suit against the heirs of the tax-deed holder for possession and partition, claiming the tax deed was void. A vendee then acquired the tax title by a quitclaim deed and a guardian's deed, subject to the pending suit, which he agreed to defend. *Held,* he took no better title than his vendors enjoyed and was not an innocent purchaser under the recording act.

6. ESTOPPEL—*Amendment of Petition after Substitution of Purchaser as Defendant.* After the vendee purchased he was substituted for his vendors in the pending suit. The plaintiffs then enlarged the issues by alleging the grantee in the tax deed acted as the agent of the insane landowner. *Held,* the plaintiffs were not estopped in equity from introducing the new issue.

7. ACTIONS AND REMEDIES—*Laches.* Laches is an equitable bar to relief depending on all the circumstances of the case, and except in instances of clear error the judgment of the trial court denying its effectiveness will not be disturbed.

8. ——— *Same.* Under the circumstances of this case it is held that neither equity nor public policy absolutely forbade the court to investigate the plaintiffs' cause of action, and the substituted defendant, who purchased after the suit was commenced, with full knowledge of its pendency and purpose, and under an agreement to defend it, has no special standing in equity to complain that the plaintiffs were dilatory in starting proceedings or that the cause was heard and decided on its merits.

Appeal from Chautauqua district court; GRANVILLE P. AIKMAN, judge. Opinion filed February 12, 1910. Affirmed.

*Altes H. Campbell, John F. Goshorn,* and *W. S. Fitzpatrick,* for the appellant.

*W. P. Hackney,* and *J. T. Lafferty,* for the appellees except Etta Sanders.

*W. W. Padgett,* and *H. A. Pritchard,* for Etta Sanders.

The opinion of the court was delivered by

BURCH, J.: This is an appeal from a judgment in ejectment and partition. The chief controversy relates to ownership. The appellant claims under a tax-deed holder. His opponents claim under the delinquent land-owner. The appellant also has a share of the property independent of the tax deed, but the tax title must be sustained to work a reversal of the judgment of the district court.

The land formerly belonged to Hester A. Spurlock. It was school land, and was sold on contract to her brother, Owen P. Spurlock, in 1872. In 1873 she took an assignment of the contract, afterward completed the payments, and in 1881 became entitled to a patent from the state, but no patent was issued to her. She removed from Kansas to Illinois in 1880, soon afterward became insane, and died in 1893. She left no will, and, her parents being dead, whatever interest she then had in the land descended to the following persons: One-fourth to a sister, Etta E. Meskimer, then the wife of John M. Meskimer, and now Etta E. Hatfield. One-fourth to the heirs of a deceased brother, Fred Spurlock, as follow: Oscar Spurlock, one-twelfth; Ida Vince, one-twelfth; Ed Spurlock, one-twelfth. One-fourth to Etta Sanders, who was the sole heir of a deceased sister, Mary E. Saxton. One-fourth to the heirs of a deceased brother, Owen P. Spurlock, as follow:

Rachel Spurlock, one-eighth; Robert Spurlock, one-eighth.

These interests are now held, or represented on the record, as follow: The Etta E. Meskimer one-fourth by Herman, the appellant. The Etta Sanders one-fourth by herself; she conveyed her share to the appellant, but proceedings are pending to avoid the transaction. Ed Spurlock's one-twelfth by himself. The remainder, Oscar Spurlock's one-twelfth, Ida Vince's one-twelfth, Rachel Spurlock's one-eighth, and Robert Spurlock's one-eighth, altogether five-twelfths, by the Hudsons and J. A. Frawley.

The taxes on the land for the year 1881 were not paid. In 1882 it was sold for taxes to Hester A. Spurlock's brother-in-law, John M. Meskimer. No redemption having been made, a tax deed issued to him in 1885. He died in 1890, leaving as his heirs his widow, Etta E. Meskimer, and two children, Lulu Pearl Meskimer (now Hand) and John C. Meskimer. In March, 1899, these heirs of John M. Meskimer procured a patent to the land to be issued by the state to them, which was recorded July 20, 1899.

In November, 1903, the appellant entered into a contract to purchase the interest of the Meskimer heirs for $5000 and one-tenth of the oil thereafter to be produced from the land, and the sum of $500 was deposited in a bank, to be forfeited by the vendee unless the purchase were consummated within six months. In November, 1904, this contract was abrogated and another was made, whereby the appellant purchased the Meskimer interests outright for $13,000. Pursuant to this contract Etta E. (Meskimer) Hatfield and Lulu Pearl (Meskimer) Hand quitclaimed to the appellant on November 29, 1904, for a consideration of $9000, and on February 28, 1905, John C. Meskimer, a minor, conveyed by guardian's deed, for a consideration of $4000. By these deeds the appellant became the owner of the land if the tax deed be valid, and in any event he be-

came the owner of the one-fourth interest inherited by Etta E. (Meskimer) Hatfield from her sister, Hester A. Spurlock.

On December 18, 1906, Etta Sanders made the conveyance to the appellant which she now claims was procured by fraud. In this deed she covenanted that she is the daughter and sole surviving heir of Mary E. Saxton, formerly Mary E. Spurlock, deceased.

This action was commenced on January 13, 1904, by Oscar Spurlock and Ida Vince. The appellant became a defendant by substitution on February 6, 1906. The Hudsons and J. A. Frawley became substituted plaintiffs October 2, 1906. The Hudsons and Frawley filed a third amended petition praying for possession, for rents and profits (including oil to the value of $25,000 alleged to have been extracted from the land and sold by the appellant), for a cancellation of the patent to the Meskimer heirs, and for partition. It was alleged that the tax deed is void on its face, that when the tax deed was issued Hester A. Spurlock was insane, that John M. Meskimer wrongfully took out the tax deed for the purpose of defrauding Hester A. Spurlock, that he failed to perfect title under the tax deed by suing for possession within two years, the land meanwhile being in the possession of Hester A. Spurlock's tenants and agents, that the patent issued to the Meskimer heirs was procured through fraud, and that the appellant purchased with knowledge of all the facts.

The answer, besides other denials, denied fraud in taking out the tax deed, alleged that the land was vacant when the tax deed was issued, pleaded adverse possession in John M. Meskimer, in his heirs after his death, and then in the appellant, interposed the limitation prescribed in section 141 of the tax law (Gen. Stat. 1901, § 7680) in bar of the assault on the tax deed, set up the appellant's chain of title, including the deed from Etta Sanders, and asserted that his development of the oil resources of the land was necessary to pre-

vent it from being drained by wells on adjoining tracts. His prayer was for all the land, but if the other parties were entitled to a share that he be awarded one-half of it, including the part where his oil wells are situated.

The reply to the answer was that the tax deed was improvidently issued under the school-land laws, that John M. Meskimer acted as agent of Hester A. Spurlock when the tax deed was taken, that the appellant had knowledge of the fraudulent character of that transaction, and that the purchase of the Sanders interest was an admission of the Spurlock title.

On the trial a tax-receipt stub book, admitted to be a part of the records of the county, was received in evidence over the appellant's objection. It reads as follows:

"Tax-receipt stub.   Date August 31, 1881.   $10.
No. 2904.
"In full to Hester A. Spurlock, by J. M. Meskimer, Shellsburg, Iowa.   [Then follows a description of the land in controversy and a statement of the tax of 1880.]"

On the day this stub is dated interest was paid on the school-land contract in the sum of $5.75. The last previous payment of interest was made November 28, 1879. In November, 1881, the following receipt for the final payment on the school-land contract was issued:

"$58.63.                    COUNTY TREASURER'S OFFICE,
SEDAN, KAN., November 15, 1881.
"Received of Hester A. Spurlock, by J. M. Meskimer, fifty and ³⁹⁄₁₀₀ dollars balance in full payment of principal and five and ³³⁄₁₀₀ dollars, the interest to date upon the following-described school land situated in Chautauqua county, and state of Kansas, to wit: The southwest quarter (¼) of section thirty-six (36), township thirty-four (34), range eleven (11).   No. of acres, 160.
(Signed) E. W. DAVIS,
"No. 253.                              *County Treasurer.*"

John M. Meskimer paid the taxes of 1882 and 1883. These payments were indorsed on the certificate of sale

issued in 1882, and were included in the consideration of the tax deed issued in 1885. After 1885 he paid all taxes to the time of his death, in 1890. His heirs and the appellant have paid all taxes since that time.

From 1880 until his death John M. Meskimer was a nonresident of the state. After obtaining his tax deed he made no effort to reduce the premises to possession. After his death his widow and children took no steps to gain possession until 1894. Mrs. Hatfield then placed an agent by the name of Kent in charge. When Kent came he was told by Oscar Spurlock that the land belonged to his aunt, meaning Hester A. Spurlock. Kent was also told by J. A. Vince, husband of Ida Vince, that he believed his wife and her sister were heirs to the land and that if it was worth anything they would give the Hatfields a lawsuit. Since 1894 possession has been maintained by Mrs. Hatfield and by the appellant. The patent to the Meskimer heirs was procured upon an affidavit of Etta E. Hatfield which misstates material facts.

Prior to 1881 a log house, sixteen by eighteen, was erected on the land, a well was dug and a log barn and a shed were built. A lot about the buildings was fenced with a wire fence, some forty acres were enclosed with a rail fence, and from seven to nine acres were cultivated. Ten or twelve acres of grass were mowed for hay, and the land supported some timber. After Hester A. Spurlock removed to Illinois her brother, Fred Spurlock, who lived near, looked after the premises for her. He died in 1882, and supervision of the place was continued by his widow, and by his son, Oscar Spurlock. It was rented and the house was intermittently occupied by tenants until in 1886. In the fall of that year the house was removed by Fred Spurlock's widow, and she sold some of the fence rails. Others had been burned. The barn was not worth moving and afterward rotted down. The land could not be rented because of the condition of the fences, and

without the expenditure of money for that purpose it was unprofitable. It was not used after 1886, became grassed over, and stock ran over it at will. The Spurlocks looked after the timber until Kent came. Oscar Spurlock says while Kent was cutting timber for posts he stopped him.

The appellant testified relating to his negotiations with the Meskimer heirs and said he was to take the land subject to the Spurlock-Vince suit, and defend it. His second contract stated the first one had not been performed "because of certain questions as to the title to the premises," which referred to the pending litigation. He forfeited the money deposited to secure performance on his part of the first contract.

The court found generally for the substituted plaintiffs and those holding by title similarily derived. The tax-deed and patent titles were decreed to be held in trust for the benefit of the successful parties. Partition was awarded without securing to the appellant the oil wells he had sunk, but he was allowed full compensation for all his expenditures in developing the property. On an accounting it was found he had paid out more than he had received and he was given a lien for the balance due, and for all taxes paid.

The appeal raises a great variety of questions. No special findings of fact and conclusions of law were returned, and without these it is impossible to know what view the trial court took of either the facts or the law. Counsel seem to be agreed, however, that the principal question is, What was the relation of John M. Meskimer to Hester A. Spurlock when the tax certificate and tax deed were issued to him? This question is argued as if it involved merely the disqualification of an agent to purchase his principal's land at tax sale. Proceeding on this theory the appellant says if Meskimer were agent to pay the taxes of 1880 he did so, if he were agent to make the final payment on the school-land contract he did so, and then those agencies terminated.

They were special agencies to do specific things and a general agency thereafter to conserve Hester A. Spurlock's property for her can not be inferred from them. He rested under no moral or legal duty to the state or to Hester A. Spurlock to pay the taxes of 1881 or of any subsequent year, much less to protect the land from tax sale to the end of his days. The fact that his wife was a sister to the landowner imposed no fiduciary relationship upon him, and being without obligation of any kind he was without disqualification. The conclusion is that a finding of agency and a consequent disability to take a tax title are unsupported by the evidence. This argument is sound and would prevail if it were based upon the only reasonable interpretation of the facts, but there is another view.

It will be remembered that title under the tax deed was not asserted by John M. Meskimer in his lifetime, nor by anyone at all during the lifetime of Hester A. Spurlock, nor by John M. Meskimer's widow until after she remarried, and then her claim ran counter to the understanding of other members of the family who had always regarded the land as belonging to the insane Hester, who, so far as the record shows, had no guardian and no one to protect her rights or property except her relatives. It is agreed that Hester A. Spurlock left Kansas late in 1879 or early in 1880 and soon afterward was adjudged insane. On November 28, 1879, interest was paid on her school-land certificate. The next business transaction relating to her property occurred after she had become helpless and when her property was in jeopardy. The taxes of 1880 were not paid when due, and a few days before the land would have been sold for taxes John M. Meskimer, her sister's husband, paid them. Where he obtained the money is unknown. He lived in Iowa, she was in an asylum in Illinois, and the land was in Kansas. But he paid her taxes and saved her land from tax sale. He had no property right in the land, no right to pay taxes for any

one except her, and no advantage could accrue to any one from his conduct except to her. He assumed to act, and the act itself shows indisputably that it was for her benefit and protection. On the same day these taxes were paid interest was again paid on the school-land certificate. Who paid it is not disclosed. If he did not, some one else was coöperating with him in the preservation of the land to Hester A. Spurlock. If he paid it, he did everything necessary at the time to prevent her from becoming in default. In November following he satisfied her obligation to the state and secured the land for her as effectually as if the patent had issued at once. Whatever else may be said, he did just the things which were necessary to preserve and vest the title to the property in Hester A. Spurlock, who was incapacitated from acting for herself, and who would otherwise have been in immediate danger of suffering a forfeiture. It is possible that in August Meskimer had $10 of Hester A. Spurlock's money in his hands as an agent to pay her taxes and paid them, that in November he had $58.63 of her money in his hands as an agent to pay the state and did so, that this exhausted her funds, left him without the necessary $10 to pay the taxes due November 1, and that he coolly waited until the next September and then went into the tax-title business as a stranger to her; but it does not seem probable. While Meskimer was looking after taxes and the contract with the state for the insane woman her brother was looking after the land itself for her. Fred Spurlock had possession and control of the premises in her behalf. When he died his widow and children assumed and discharged the trust. The tax deed was issued and recorded, but Meskimer did not interfere. The Spurlocks dismantled the premises and appropriated the improvements without any protest from him. Five years passed by and Meskimer went to his grave without having made the slightest attempt to assert the rights of an owner over the land of his sister-in-law,

who was still alive.  In the light of all these facts, what was his purpose in taking the tax certificate and deed? The inference is very strong that he was actuated by no mercenary craving to augment his own estate by taking advantage of her misfortunes; that his purpose was the honorable and creditable one of keeping the taxes paid for her; and that he adopted the method of paying upon a certificate of sale and deed to protect his outlay should she be restored to reason or should the land be divided among those who might succeed to her rights. The facts are very meager, indeed, and much may be urged in opposition to this conclusion, but it can not be said to be unwarranted by the evidence.  It was the province of the trial court to estimate the evidence and to deduce the true inference from among the several which might be drawn.  This court is concerned no further than to see that such inference is legitimate and not based upon speculation and conjecture.  Being satisfied with the sufficiency of the proof, the court holds the finding that John M. Meskimer acted as the agent of Hester A. Spurlock and merely paid her taxes by means of the tax certificate and deed to be sustained.

The finding just considered is included in the general finding against the tax title and is fairly embraced within the issues.  It was not necessary to extend the proof to include fraud on Meskimer's part.  It is enough that he acted as Hester A. Spurlock's agent.  It must be conceded the finding rests in part upon the evidence supplied by the tax-receipt stub book which was introduced over the appellant's objection.  It is said the book was not admissible because it is not one of the books or records required by law to be kept.  (Civ. Code, § 387a; Gen. Stat. 1901, § 4836.)  The law requires the county treasurer to keep a just and true account of the receipt and expenditure of all moneys coming into his hands by virtue of his office in a book or books to be kept by him for that purpose.  (Gen. Stat. 1868, ch. 25, § 67.) The kinds of books are not specified, so that any book

essential or even convenient for the purpose will suffice, and any such book, officially adopted and used, necessarily falls within the requirement of the statute. Whenever the treasurer receives any tax money he must give a receipt therefor. (Laws 1876, ch. 34, § 89.) Certainly no better method of keeping an account of it could be devised than one which in effect duplicates the matter of the receipt itself upon a numbered stub from which the receipt is torn. The stub is the treasurer's first book entry, made at the command of the statute to preserve a just and true account of taxes received. The stub book in question was admitted to be a part of the records of the treasurer's office, a fact which distinguishes the case from *Noble v. Douglass,* 56 Kan. 92, 93. The probative force of the book is questioned, but becomes instantly manifest when considered from another standpoint. If Meskimer had been called to account for funds in his hands and had lost his tax receipt the stub book would have been conclusive in his favor. It shows he paid Hester A. Spurlock's taxes.

The rules of law to be considered in connection with the finding, so far as the Meskimer heirs are concerned, are these: No formal appointment is necessary to constitute one person an agent for another, and the relation of principal and agent may be proved against those claiming under the supposed agent by his conduct and by circumstances. The agent may have intervened voluntarily and may have used his own funds; and in litigation with his heirs his conduct may be accepted by the heirs of the person for whose benefit he acted. Especially is this true here, since Hester A. Spurlock was herself incapable of expressing recognition of the agency. Persons claiming by inheritance from an agent to pay taxes are bound by the conduct of their ancestor and take no better title than he possessed; and when that title is a naked legal title, with an incidental lien for taxes, it will be held for the benefit of the principal and his successors in interest, subject only to the lien.

Hudson v. Herman.

These rules are sufficiently discussed and are properly applied in the thoroughly considered case of *Siers v. Wiseman,* 58 W. Va. 340, which is identical in principle with the one under decision.

Since the appellant holds by a quitclaim deed and a guardian's deed he obtained no more than his grantors were able to convey. He is not an innocent purchaser under the recording act, because he bought subject to the pending Spurlock-Vince suit, the defense of which he assumed. The plaintiffs in that suit and those alleged to be cotenants with the plaintiffs were certainly "ostensibly" interested, within the rule declared in *Smith v. Rudd,* 48 Kan. 296, and *Eger v. Brown,* 77 Kan. 510, 513.

The appellant urges, however, that he purchased with reference to the claim exhibited by the pleadings on file at the time he made his contract and that his antagonists were estopped from subsequently introducing the issue of agency. The principle of equitable estoppel is not pertinent. The plaintiffs were attacking the title asserted by the appellant's grantors, and against them might have amended the petition or pleaded additional defenses to the tax deed in the reply. The appellant merely stepped into the litigation as he found it. If before purchasing he had followed up the notice afforded him by the pending action, had inquired of the plaintiffs and those similarly situated what rights they claimed, had obtained from them a definite statement of their position, and relying upon such statement had involved himself in the suit, perhaps they would not be allowed to mend their hold. But nothing of that kind occurred. It makes no difference that the tax deed was good on its face and that the state had issued a patent for the land. The patent settled no rights. It merely devested the state of the legal title, which the patentees took for the benefit of the true owners, whoever they might be. The Spurlock-Vince suit was due notice that the tax deed and patent were not what they seemed, and

such notice is equivalent to knowledge of the ultimate facts. (*Phillips v. Reitz,* 16 Kan. 396.) The case of *Cornell University v. Parkinson,* 59 Kan. 365, cited by the appellant, is not applicable. In that case there was a question concerning the amount of the plaintiff's lien. A stipulation fixing the amount was made and filed and judgment was entered accordingly. On the faith of the stipulation and judgment one of the parties altered his situation. It was held the plaintiff was then estopped to deny the correctness of the stipulation. If the Spurlock heirs had limited their claims by an express stipulation, and the appellant had purchased on the faith of it, the two cases would be more nearly parallel. As it is, the appellant merely took the place of the parties for whom he was substituted.

The defense of adverse possession was not sustained. The Spurlocks were in possession until 1894, and the action in the district court was commenced in January, 1904. The limitation prescribed in section 141 of the tax law (Gen. Stat. 1901, § 7680) has no application because the attack is not upon the tax proceedings but upon the capacity of the grantee in the tax deed to take and hold title. (*Woodman v. Davis,* 32 Kan. 344; *Wiswell v. Simmons,* 77 Kan. 622, 629.)

The doctrine of laches is invoked. Laches was not pleaded, but the appellant urges that it goes to the right of the plaintiffs to recover against him. Waiving the question of pleading, it may be observed that laches is an equitable bar to relief depending on all the circumstances of the case (*Dunbar v. Green,* 66 Kan. 557, 567), and except in instances of clear error the judgment of the trial court denying its effectiveness will not be disturbed. In this case no unusual circumstances appear to shorten the ordinary statutory period of limitation. There was no occasion to sue Meskimer. He claimed neither title nor possession during his lifetime. When Hester A. Spurlock died, in 1893, Mrs. Meskimer became a tenant in common with the other Spurlock

heirs, some of whom were in possession. When Kent entered for her, in 1894, she had a right to possession as an heir of Hester A. Spurlock. Her first really hostile act was the recording of the patent in 1889, and suit was brought within four and a half years thereafter. If the entry in 1894 be regarded as a disseizin, the plaintiffs' claim was by no means stale, no prejudice to the tax-title claimants appears to have resulted from the delay in bringing suit, and the rights of no innocent third parties intervened. Perhaps the plaintiffs were somewhat at fault in not making an early offer to pay their share of the taxes Meskimer advanced, and in waiting to bring suit until the land rose greatly in value, but neither equity nor public policy absolutely forbade the court to investigate the plaintiffs' cause of action. The appellant has no special or peculiar reason to complain because the court considered and decided the case on its merits. He purchased after the action was begun, with full knowledge of its pendency and purpose, and under an agreement to defend it, and he suffered nothing because the plaintiffs were dilatory in starting proceedings which did not concern him.

The appellant proved that the oil wells which he sunk were necessary for the protection of the whole estate, and it was clearly just to allow him his entire expenditure for that purpose. This having been done, he has no equitable claim to the oil wells besides.

In view of the foregoing it is unnecessary to decide other questions discussed in the briefs and at the hearing. A motion to dismiss the appeal is denied, and the judgment of the district court on the merits is affirmed, saving of course the right of Etta Sanders to contest the effectiveness of her deed to the appellant.