GEORGE W. DUSENBERY, *Appellee*, v. MATEY L. BIDWELL *et al.*, *Appellants.*

No. 17,472.

SYLLABUS BY THE COURT.

1. DEED—*Absolute in Form—Security—A Mortgage.* Where a debtor executed to his creditor a deed, absolute in form, which both understood and intended as a security for the payment of the debt, it will be treated as a mortgage with the consequent right in the grantor to redeem.

2. MORTGAGEE IN POSSESSION—*Tax Sale—Certificate—Tax Deed.* Where the mortgagee held the legal title and possession of the mortgaged land under an agreement that he would pay the taxes and charges accrued and accruing against the land, and that when a purchaser was found and a transfer made he

Dusenbery v. Bidwell.

would take from the proceeds the amount of the debt due him and the mortgagor should have the remainder of the proceeds, and, thereafter, the mortgagee failed to pay the taxes, and later purchased the land at a tax sale, his purchase, in effect, constituted a payment of the taxes, although he procured the certificate of sale and tax deed to be issued in the name of another.

3. LACHES—*Redemption*—*Statute of Limitations*—*Fraud.* Lapse of time is not necessarily laches and laches in asserting a right does not necessarily defeat it. Whether laches *is* sufficient *to* bar relief depends on the circumstances of the case, such as the presence of fraud, intervention of the rights of third parties, delay being induced by the action of the adverse party, disability, death of parties, ignorance of facts or of rights, and change of relations and conditions.

4. ——— *Same.* Where the mortgagee purchased the land at a tax sale and took the title in the name of another, representing in letters written to the mortgagor, who resided in a distant place, that he had been unable to pay the taxes, that the land had been conveyed by a tax deed to a stranger, that the period of redemption had passed so that the interest of both had been lost, and where, about seven years after the mortgage was given, the mortgagee died, and thereafter the stranger in whose name the tax deed was taken conveyed the land to the heirs of the mortgagee without consideration, and where the mortgagee and his heirs had the possession of the land, which in the meantime had greatly increased in value, and where the mortgagor knew that the land had been sold for taxes and conveyed to another but did not know of the fraud of the mortgagee, nor that he was the purchaser at the tax sale, nor that the grantee in the tax deed was not a *bona fide* purchaser, until about fifteen years after the mortgage was made and executed, nor until about the time the action to redeem was begun, *held,* that the right of redemption of the mortgagor was not extinguished by laches or by the statute of limitation.

Appeal from Kiowa district court. Opinion filed March 9, 1912. Affirmed.

STATEMENT.

ACTION for redemption from an alleged mortgage, which was, in form, an absolute deed, in which appellee asked to have the amount of the mortgage debt

determined and that he be allowed to redeem the land upon payment of the amount due, and that thereupon he be decreed to have the legal and equitable title to the land.   Upon testimony offered the court made the following findings of fact and conclusions of law:

### "FINDINGS OF FACT.

"That upon and prior to August 22nd, 1894, the plaintiff George W. Dusenbery was the owner in fee of the lands involved herein, to-wit:   The Northwest Quarter of Section Thirty Five, Township Twenty Eight, Range Twenty, in Kiowa County, Kansas.

"That upon said date, August 22nd, 1894, plaintiff and his wife executed and delivered to George H. Bidwell a warranty deed conveying said lands to said grantee; and that the consideration expressed in said deed was $1200.00.   At the date of this instrument George H. Bidwell held a promissory note signed by plaintiff which is in words and figures as follows:

"$500.00                    MULLINVILLE, KANSAS,
                                     June 23, 1893.
    Sixty days after date we promise to pay to the order of Geo. H. Bidwell Five Hundred and 00-100 Dollars, at Mullinville.   Value received, with interest at ten per cent per annum after date until paid.                          G. W. DUSENBERY.
                                LAVINA DUSENBERY.

    (Endorsements)
    "Aug. 12,    By Cash    52.46
     Aug. 31-93        "          21.84"

"This note has ever since said date been in the possession of said Bidwell, his administrator or heirs.

"That upon August 31, 1894, plaintiff executed and delivered to said George H. Bidwell his promissory note as follows:

"$231.00              MULLINVILLE, Aug. 31, 1894.
    Ninety days after date I promise to pay to the order of George H. Bidwell, Two Hundred Thirty One Dollars at ten per cent interest from date. Value received.                    G. W. DUSENBERY.

"This note has remained in the possession of said Bidwell, his personal representatives or heirs at all times since said date.

"That said deed was executed and delivered to said

Bidwell under an agreement with said Bidwell that he should hold the title to said land as security for the indebtedness then existing due from said Dusenbery to him, and under the further agreement that he should care for the land, arrange for renting the same, collect the rents therefrom and pay the taxes, and pay the United States Government $100.00 as a final payment upon the land, and further that Bidwell was to sell the land whenever a price could be secured that would be sufficient to pay Bidwell his lien and expenses, the balance if any, to go to Dusenbery. That Bidwell took charge of said property under such agreement and remained in charge thereof until his death and made no sale thereof at any time.

"That about September 1st, 1894, said Dusenbery and his family left the land and moved to Topeka, Kansas, and has at all times since been a non-resident of Kiowa County, and absent therefrom until May, 1909.

"That upon June 15, 1897, there was due from plaintiff to Bidwell on account of said original indebtedness, interest, taxes, amount paid the United States Government, expenses, and claim for improvements, the sum of $600.00.

"That upon June 1st 1897, a tax deed was issued by Kiowa County conveying these lands to L. M. Day in consideration of the delinquent taxes of 1892 and subsequent taxes; the total consideration for said deed being $119.33.

"That this deed was caused to be issued by said Bidwell without the knowledge of said Day, and all the consideration therefor was paid by said Bidwell. That said Bidwell had said tax deed issued for the purpose of obtaining a fee simple title himself to said lands and to bar plaintiff from any interest he might have therein.

"That said Bidwell died in 1901, and upon December 6th, 1904 L. M. Day executed and delivered a quit claim deed conveying these lands to the heirs of said Bidwell. No consideration passed for this deed.

"That plaintiff did not receive knowledge of the interest of said Bidwell in said tax deed until May, 1909.

"That Geo. H. Bidwell and his heirs have been in possession of said land at all times since 1894.

"That no suit to foreclose or enforce any lien claimed

by George H. Bidwell or his heirs or personal representatives has ever been brought.

"That the total net amount due at this time from Dusenbery to defendants by reason of the aforesaid indebtedness, interest, expenses of handling land, taxes, credits of all kinds including interest and claims for improvements, amounts to the sum of $1500.00 after deducting all claims for rents and profits.

"That the said land had little if any market or cash value from 1894 to 1897 inclusive. Its market or cash value from 1897 to 1901 was about $200.00. In 1904, $2000.00. In 1906, $3000.00. In 1909, $6000.00. And at the date of the trial about $8000.00.

"These facts must be found regardless of whether the testimony of Mrs. Dusenbery is considered or not.

"That prior to the bringing of this suit, defendants denied the title of plaintiff in and to the said land, and refused and now refuse to permit his redemption of the same by the payment of his indebtedness, and now claim to own the same in fee."

"CONCLUSIONS OF LAW.

"The warranty deed given in 1894 was in fact a mortgage.

"The attempt by George H. Bidwell to secure title through a tax deed in 1897 was a fraud upon the rights of Dusenbery and as neither actual or constructive notice of this fraud came to Dusenbery until 1909, the two years of limitation did not run.

"No statute of limitation has run against redemption.

"The duty resting upon Bidwell to pay the taxes against the land, he could acquire no title by taking out a tax deed in the name of another.

"The personal representatives and heirs of George H. Bidwell have no greater right than he had.

"Judgment should be for plaintiff permitting redemption and recovery of the land and cancellation of the deed."

In accordance with these findings judgment was entered decreeing a redemption upon the payment by appellee of $1500 and that his title in the land be quieted as against appellants. From this judgment an appeal was taken.

*F. Dumont Smith,* and *L. M. Day,* for the appellants.

*Z. T. Hazen, R. H. Gaw,* and *Otis. E. Hungate,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The instrument executed by George W. Dusenbery to George H. Bidwell, on August 22, 1894, was a deed, absolute on its face, and its purpose and effect are the principal points of dispute between the parties. It is contended by appellants that the agreement made when the instrument was executed was an attempt to create an express trust which, under the statute, can not be created by a parol agreement; while appellee insists that the instrument was understood and intended by the parties to be a mere security for the payment of a debt due from Dusenbery to Bidwell and that, under the facts found, he is entitled to redeem. It is no longer open to debate that a deed, absolute in form, executed as security for a loan, is to be treated as a mortgage with the consequent right in the grantor to redeem. Effect is to be given to the intent of the parties, and their contemporaneous agreements evidencing that intention may be shown by parol proof. As was said in *Hubbard v. Cheney,* 76 Kan. 222, 91 Pac. 793:

"Equity looking back of forms to the substance of things regards the transaction as the parties themselves regarded it, namely, the giving and taking of security for borrowed money. The purpose of the parties in having the deed made to her, and that it was intended as a mere security, which had been discharged, could be proved without writings or records." (p. 225.)

(*Moore v. Wade,* 8 Kan. 380; *Glynn v. Building Association,* 22 Kan. 746; *Bennett v. Wolverton,* 24 Kan. 284; *McDonald & Co. v. Kellogg, Trustee,* 30 Kan. 170, 2 Pac. 507; *Le Comte v. Pennock,* 61 Kan. 330, 59 Pac. 641; *Abrams v. Abrams,* 74 Kan. 888, 88 Pac. 70; *Stratton v. Rotrock,* 84 Kan. 198, 114 Pac. 224.)

The purpose of the parties and the character of the transaction are well established by the testimony. Aside from the testimony that the deed was understood to be a mortgage there was the acknowledged indebtedness of Dusenbery and the recognition of both parties of the continuance of the indebtedness after the execution of the instrument. The oral statements of Bidwell, and a number of his letters, evidenced that he did not regard the debt to have been extinguished by the execution of the deed and that he did not think that he had acquired Dusenbery's interest in the land. An explanation of the reason for making the instrument in the form of a deed, according to the testimony, was that Dusenbery was moving from that region, and in order to avoid the delay and the danger of losing a purchaser when one was found, which would result from sending to Dusenbery in his distant home for the execution and return of title papers, the deed was made. Testimony was given to the effect that the property was left in charge of Bidwell, who was to collect the rent and apply it, as far as it would go, on the taxes and charges; that he was to keep the premises in repair, pay the taxes and charges accruing against the land, and when a sale was made he was to take from the proceeds the amount of his indebtedness and pay the balance to Dusenbery. It was agreed that a sale could not be made without obtaining Dusenbery's consent to the price, and in one of the letters written by Bidwell about the land he chided Dusenbery for his failure to fix a price, stating that if Dusenbery had fixed a price on the land the preceding fall a sale could have been made, and in another he inquired of Dusenbery what he contemplated doing with the land, stating that he had had a chance to trade it off. In still another, he admonished Dusenbery that taxes were due on the land, which he was in no shape to meet, and if Dusenbery wished to keep his interest in the land he must protect it from the tax lien. Bidwell again wrote that

his interest in the land at that time amounted to a little over $500 when the taxes were paid, and that if Dusenbery could make a turn and pay his claim he would be glad of it.

It is insisted that the deed can not be treated as a mortgage because there was no existing debt to Bidwell which could be enforced. This claim is based on a statement of Dusenbery, while testifying, to the effect that he did not owe the debt to Bidwell until the land was sold. This statement alone might indicate that no liability existed until there was a sale, and therefore that there was no basis for a security, but it is plain from all his testimony that he meant that he was not to pay the debt to Bidwell until the land was sold. He not only recognized the existence of the indebtedness, but Bidwell held the evidence of the indebtedness and on several occasions stated the amount of it. There is sufficient evidence to show that the deed was intended as a mortgage and that the trial court in its finding and judgment only gave effect to the true intent of the parties.

The next contention is that Dusenbery is barred from claiming his interest in the land by his own laches. The deed was executed about fifteen years before the action to redeem was commenced and Bidwell died about eight years before that time. Between the time the deed was executed and the action was begun there was a great increase in the value of the land. Besides, there was the issuance of the tax deed with the knowledge of Dusenbery, who made no attempt to recover the land until this proceeding was instituted. The long delay, the death of one of the parties, and the change which time had worked in the value of the property, are the principal grounds relied on to bar the action. Lapse of time is not necessarily laches and laches in asserting a right will not necessarily defeat it. Whether the lapse of time is sufficient to bar recovery depends upon the special circumstances of the case, such as the

presence of fraud, the delay being induced by the action of the other party, ignorance of facts or of one's rights, intervention of the rights of third parties, legal disability, death of parties, and circumstances which would cause prejudice to the adverse party and for which there is no good excuse or explanation. (*Dunbar v. Green*, 66 Kan. 557, 567, 72 Pac. 243; *Hudson v. Herman*, 81 Kan. 627, 640, 107 Pac. 35; *Harris v. Defenbaugh*, 82 Kan. 765, 770, 109 Pac. 681; 18 A. & E. Encycl. of L. 97.)

Bidwell, as we have seen, was a mortgagee in possession. Dusenbery had an undoubted interest in the land, asserted by him and acknowledged by Bidwell. The agreement contemplated some delay, and mere delay does not always bar the assertion of an equitable right. So it was said:

"It must be noticed that the courts in some cases have, notwithstanding great delay, inquired into the equities between the parties, and, where it was apparent that justice could be done, have given relief. So where the delay is satisfactorily explained, the equity of the complainant, if clearly established, remains unaffected, and the court will decree for him notwithstanding great efflux of time." (18 A. & E. Encycl. of L. 99.)

Is there a good explanation of the delay of Dusenbery? The nature of the transaction and the agreement of the parties is a sufficient explanation of the delay as between them, at least until the tax deed was issued. Bidwell never did renounce his trust nor deny Dusenbery's interest in the land, and nothing was done by Dusenbery indicating a relinquishment of his right. The delay did not mislead Bidwell nor operate to his prejudice, neither is there any inequity in enforcing the right to redeem so far as he was concerned. Dusenbery did know of the sale of the land for taxes but took no steps to set it aside. Was there a sufficient excuse for his nonaction? Bidwell, whose duty it was to pay the taxes, allowed them to be in default, purchased the

land at a tax sale, and subsequently took a tax deed in the name of another with the manifest purpose of defrauding Dusenbery by secretly acquiring the title himself, in violation of his trust and of the agreement with Dusenbery. His letters betray a cunningly devised scheme, first, to create the opinion that the land was not worth the taxes, and then to secure Dusenbery's title to the land without paying a consideration for it and without even satisfying the debt secured by the mortgage. He wrote Dusenbery about his difficulty in meeting the taxes and suggested that Dusenbery assist in paying them, then, again, that he was making provision for clearing them up, then of the danger that the land would yet be taken for the taxes, when, at the same time, the land had been sold for the taxes, the title placed in one who had no interest, while Bidwell was carrying around the unrecorded tax deed in his pocket. He told the party in whose name the tax deed was taken out, "I have taken out a tax deed in your name and I want you to hold the title for me." Until that time the involuntary grantee in the tax deed had not heard of it, and frankly testified that he had no interest in the land and never saw the deed during Bidwell's lifetime. Finally Bidwell wrote Dusenbery that the tax deed had been issued and that the period of redemption had expired and that he had been unable to save the land. Throughout the correspondence Bidwell had assumed the attitude of friendship towards Dusenbery and had expressed the desire to protect Dusenbery's interest as well as his own. It is easy to understand that Dusenbery would accept his statements as true and would believe that, notwithstanding Bidwell's avowed friendly interest and efforts, the land had been lost to both of them. Now, it being the duty of Bidwell to pay the taxes on the land, his action in purchasing it and taking out a tax deed transferred no interest and effected no more than a payment of the taxes. He was not a purchaser, but a redemptioner, and his acts, though he

took the deed in the name of another, were the equivalents of payment and redemption.

If Bidwell were yet alive it is certain that he could not have resisted redemption nor procured the seal of judicial approval on his breach of trust. As Dusenbery had no cause for questioning the good faith and honesty of Bidwell, and did not know, until a few weeks before the action was begun, that the sale and conveyance of the land for taxes was fraudulent and void, it can not be said that there was no excuse for his long delay. It would be an injustice, under the circumstances stated, to bar his right of redemption on the ground of laches, as against mortgagees in possession. Laches is an equitable doctrine that is invoked to promote but never to defeat justice. Bidwell's heirs, who are the appellants, are in no better position than he occupied. He only had the rights of a mortgagee at the time of his death, and their possession and rights were of the same character. (*Hudson v. Herman,* 81 Kan. 627, 107 Pac. 35.) It does not appear that they ever denied the title of Dusenbery, nor that he learned of the fraudulent covering up of the title under the pretended tax sale and deed until about the time the suit was brought. The delay arose from an abuse of confidence, which accounts for the failure of Dusenbery going to Kiowa county and searching out the real facts. If he had known of the fraud, and delayed taking action after learning that appellants were asserting that he had no interest in the land, there would be some ground to claim abandonment and that lapse of time operated as a bar.

An essential element in enforcing the doctrine of laches is that the party against whom it is invoked shall have knowledge of the facts and of his rights, or of the circumstances that should have induced inquiry and efforts to obtain knowledge. It is said that "laches can not be imputed to one who was ignorant of his rights, and for that reason alone failed to assert them." (18

A. & E. Encycl. of L. 113.)    It devolved on Dusenbery, who relied on ignorance of facts material to his rights, to show a want of knowledge and an excuse for not obtaining knowledge and for his failure to act earlier. This appears to have been done, and since there are no intervening rights of strangers, no real doubt as to the terms of the original agreement or of the fraudulent concealment can exist, and as the situation of appellants is practically the same as that of their ancestor there were good, equitable grounds for holding that laches was not a bar to the right to redeem.

There is a further contention that the tax deed operated to divest Dusenbery of his title and right of redemption.    It is said that he had actual notice of the tax deed and constructive notice of the conveyance by the grantee of the tax deed to appellants by the recording of that instrument.    That afforded him no notice that Bidwell was the real party in the tax-deed transaction.    If Bidwell had taken the title in his own name the placing of the tax deed on record would not have been constructive notice to him.    He was under no obligation to watch the record for tax deeds fraudulently taken out by Bidwell.    (*Duffitt v. Tuhan,* 28 Kan. 292; *Doyle v. Doyle,* 33 Kan. 721, 7 Pac. 615; *Donaldson v. Jacobitz,* 67 Kan. 244, 72 Pac. 846; *St. Clair v. Craig,* 77 Kan. 394, 94 Pac. 790; *Morris v. Gregory,* 80 Kan. 626, 631, 103 Pac. 137; *Hudson v. Herman,* 81 Kan. 627, 634, 107 Pac. 35.)

Notice that a stranger had obtained a tax deed to the land is not notice of the fraud of Bidwell in purchasing and holding the land under the cloak of a sale to a stranger.    It did inform him that Bidwell, through alleged inability, had failed to pay the taxes according to agreement, and that another had acquired a tax title, but it gave no notice that Bidwell himself held the tax title to the land.    The last letter written by Bidwell to Dusenbery was that the title to the land had passed beyond redemption, and it can not be said by appellants

that Dusenbery had no right to accept Bidwell's representations as true. Although there was an attempt to trace knowledge which would bar relief to Dusenbery, the court, on what appears to be sufficient testimony, has found that he had no knowledge that Bidwell himself was the purchaser and the real party to the tax title until May, 1909, and in September of that year the action to redeem was begun. The two-year statute of limitations (Civ. Code, § 17, subdiv. 3), on the ground of fraud, which is invoked does not bar. It did not begin to run against Dusenbery and in favor of appellants until the discovery of the fraud, the discovery that Bidwell had not acted in good faith, and that what was represented and appeared to be a valid tax sale to a stranger was a mere subterfuge, and was in fact a sale and transfer to Bidwell himself.

It does not appear that Dusenbery was speculating on an advance in values or that he was delaying action to see whether the prices of land went up or down, but his inaction was induced largely by the fraudulent representations and action of appellant's ancestor. Considering all the circumstances of the case together, they appear to be sufficient to explain the delay of appellee and to justify the court in holding that he had not lost the right of redemption by his laches.

The judgment is affirmed.