# C. D. YANCEY, Appellant, v. PEOPLES BANK OF DE SOTO, Respondent.

**St. Louis Court of Appeals, April 14, 1903.**

1. **Equity, Proceeding in:** ISSUES OF FACT MAY BE SUBMITTED TO A JURY: DISCRETIONARY WITH COURT. In any view of the petition, or of appellant's evidence, this suit is in the nature of a bill in equity to have the deed to the bank declared a mortgage to be redeemed, or to enforce a vendor's lien. In either case the proceeding is purely equitable and not triable by a jury, except the court should desire an advisory verdict on issues of fact.

2. ——— : ——— : DEED DECLARED A MORTGAGE: VENDOR'S LIEN. Revised Statutes 1899, section 691, provides that all actions to recover money or specific personalty shall be tried by a jury, unless the same is waived and the issues referred. *Held,* where the case made by the complaint is either in the nature of a bill in equity to have a deed declared a mortgage, or to enforce a vendor's lien, it being in either view a chancery cause, it is proper for the court to withdraw the issues from the jury and determine them himself.

3. ——— : ——— : VENDOR'S LIEN TO ENFORCE: EVIDENCE. Evidence submitted to enforce a vendor's lien, *held* to show payment in full by the vendee.

Appeal from Iron Circuit Court.—*Hon. F. R. Dearing,* Judge.

AFFIRMED.

### STATEMENT.

As the petition in this case is decisive of one of the main points relied on to reverse the judgment, it will be copied with the exception of the title and the names of the attorneys subscribed to it:

"Plaintiff states that the defendant is a corporation, created and existing under the laws of the State of Missouri, and is now and was at the times hereinafter stated, engaged in the banking business at De Soto, in the county of Jefferson and State of Missouri.

"Plaintiff further states, that on the 22nd day of December, 1898, he sold to the defendant a tract of land situate in the county of Ripley and State of Missouri, particularly described as follows: The northwest quarter of the southeast quarter, the west half of the northeast quarter, and the northwest quarter of section four, township twenty-four, range three east of the fifth principal meridian, containing 277 acres, and on the day and date last aforesaid, plaintiff made, executed and delivered his deed conveying said lands to the defendant with covenant of general warranty, for the agreed con-

sideration of seven hundred and fifty dollars, which defendant then and there undertook, promised and agreed to pay plaintiff for the lands aforesaid.

"That afterwards, on the first day of January, 1899, plaintiff delivered possession of said lands to defendant, and it has been from thence, hitherto, and now is, in the full, peaceable and absolute possession of the lands aforesaid.

"That it was understood and agreed to, by and between the defendant bank, M. S. Coxwell, its cashier, acting on its behalf, and this plaintiff at the time of the execution and delivery of the deed for the lands aforesaid, that the same should be conveyed absolutely, but such conveyance should be received and treated as a mortgage on the same land and that plaintiff or his heirs should have the right to demand and have the same land reconveyed to him or them, at any time within two years from and after the date of the execution and delivery of the deed for the lands aforesaid; with eight per centum interest per annum thereon from the date of the receipt of such money up to the time of such payment.

"That at the date of the making of such payment aforesaid, plaintiff was indebted to said bank on account of three several promissory notes, to-wit: one dated May 10, 1897, for $50, with eight per cent interest; one dated January 20, 1897, for $150, with eight per cent interest; one dated July 23, 1897, for $50, with eight per cent interest; making altogether the sum of $250.

"Plaintiff states that defendant agreed to return said notes to plaintiff in part payment for the purchase price of the lands aforesaid, and then and there agreed to cancel and satisfy and deliver over said notes to plaintiff, but omitted for reasons not given at that or any time, to do so up to the first day of December, 1900, when the same and all of them were delivered to plain-

tiff with an aggregate charge of interest, added to the principal sum of said notes, of thirty dollars, making two hundred and eighty dollars altogether.

"Plaintiff further states that upon the execution and delivery of the deed to the lands aforesaid, his indebtedness to the defendant bank on account of the notes aforesaid, amounting to two hundred and eighty dollars, principal and interest, was satisfied in full, and there then remained due to him from the defendant bank the sum of four hundred and seventy dollars, payable on demand, on account of said lands.

"That defendant bank thereupon opened an account with plaintiff in its bank, and thereafter paid out to plaintiff and for his account the following sums of money, to-wit:

| | | |
|---|---:|---:|
| 1. Sight draft, W. M. Hough, favor Peoples' Bank, De Soto, dated December 21, 1898, to C. D. Yancey... | $97 | 00 |
| 2. Check, favor John T. Keith...... | 25 | 00 |
| 3. Int. Rev. Stamp on deed of December 22, 1898................. | 1 | 00 |
| 4. December 22, 1898, cash to Yancey........................... | 15 | 00 |
| 5. Three commutation R. R. tickets at 75 cents.................... | 2 | 25 |
| 6. Express charges, Pacific Express Company................. ... . | | 25 |
| To cash to Yancey, January 9, 1900.. | 25 | 00 |
| To telegram from Yancey, collect.... | | 67 |
| To check to Yancey, January 11, 1899. | 10 | 00 |
| To check to Yancey, 31, 12-98...... | 15 | 00 |
| To cash to Yancey, 1, 6-99.......... | 15 | 00 |
| To cash to Yancey, 2, 5-1900........ | 25 | 00 |
| To December 1, 1900, cash to Yancey. | 10 | 00 |
| Amounting altogether to the sum of. | $241 | 17 |

"Plaintiff further states that on the 11th day of January, 1899, he sold to T. L. Wright Lumber Company, a corporation organized under the laws of this State, all of the merchantable yellow pine timber standing and being on the lands first hereinbefore described, for the price and sum of one-hundred and seventy-five dollars cash, which was collected, gotten in, had and received in the net sum, by the defendant bank, on the — day of January, 1900.

"That of this sum of money, the defendant bank paid over to plaintiff, on his general account aforesaid, the sum of twenty-five dollars, on the second day of February, 1900, and was then directed by plaintiff to pass the balance of said sum, to-wit, one hundred and fifty dollars, to plaintiff's credit on his account with the bank as aforesaid, which defendant then and there promised to do.

"That on or about the month of February, 1899, the defendant bank deceitfully and fraudulently pretended and claimed that divers persons were claiming title adverse to it to the lands above described, and although it was then in the full and undisputed possession of all of the land, it commenced an action to quiet the title, and had divers persons summoned to appear in the circuit court of Ripley county and set up their title, if any they had. Some of the defendants so summoned appeared to the action and disclaimed any interest in the premises, but one, Mary Ann McKague, appeared and by her answer claimed title to the land in herself. To this answer a replication was filed denying her title and the issue thus joined came on regularly for trial at the November term of the Ripley Circuit Court for the year 1900, and all of the issues joined between the parties, were found in favor of the plaintiff bank, and judgment and decree given and entered accordingly.

"Plaintiff further states that defendant from and after the time of trumping up the false and fraudulent claim that it had not acquired a good title to the land aforesaid from plaintiff, refused to pay any more money to plaintiff on account of the balance of the purchase money due to him therefor, up to the second day of February, 1900, when, after having gotten $175 from the T. L. Wright Lumber Company for the timber sold to it as aforesaid, it paid to plaintiff the sum of twenty-five dollars.

"Plaintiff further states that on the 21st day of November, 1900, he called at the banking house of the defendant at De Soto, Missouri, and requested the cashier to make out a statement of the account between the bank and this plaintiff, which he promised to do. Plaintiff again called on the cashier and demanded the statement of his account and offered to pay any balance that might be due to the bank, and take a re-conveyance of the lands aforesaid. Plaintiff was then informed that the settlement must be made with Judge Green, acting for the bank. Settlement was postponed under one pretext or another until the first day of December, 1900, when Judge Green, by appointment, met the plaintiff at the banking house of defendant and handed over to plaintiff all of the notes, cancelled checks and receipts for money of plaintiff and told plaintiff that he was indebted to the bank in the sum of eight or ten dollars, plaintiff demanded a detailed statement of his account with the bank, which the cashier refused to give.

"Plaintiff demanded the reconveyance of the property above described and the cashier denied that there was any agreement to reconvey.

"Plaintiff states that the lands hereinbefore described are of the reasonable cash value of two thousand dollars.

"Plaintiff states that the defendant owes and is indebted to him in the sum of five hundred and three dol-

lars and eighty-three cents, and for which he prays judgment.

"And the plaintiff further prays the court to require the defendant to account to and with plaintiff of and touching all the matters and things concerning the purchase of the lands aforesaid and that plaintiff have judgment for the sum found to be due him upon such accounting, and that such sum be declared to be a lien on the lands aforesaid, and that the same, or so much thereof as may be necessary, be sold under the decree of this court to satisfy said judgment, interest and costs.

"And plaintiff will ever pray," etc.

The respondent's answer admits its corporate character; that it is engaged in the banking business in the city of De Soto, Missouri; that the appellant on December 22, 1898, conveyed to it the land described in the petition by a deed which is averred to have been intended to pass the title absolutely and not for security; that the respondent paid to the appellant the several amounts mentioned in the petition, and there is a statement that it paid to him divers amounts not mentioned therein. There is a further averment that the full consideration for the land has been paid to the appellant. The answer next alleges that a full and complete settlement of all differences between the respondent and the appellant was agreed to in December, 1900, at the conclusion of which appellant delivered to respondent a receipt in full of all demands growing out of the sale and transfer of the land in controversy.

A long replication was filed in which the appellant restated the account between himself and the bank with other items than those contained in the statement made by the petition, and with a different result as to the balance shown to be due the appellant, which, as charged in the petition, is $503.83, while in the replication it is charged to be $305.84. The replication goes into some

trifling details in explanation of the receipt given by the appellant to the bank December 15, 1900, the purport of which was that the receipt was given for $14.65 paid by the bank to the appellant in settlement of certain errors in the settlement detected two or three weeks after it was made. This receipt reads as follows:

"Recd. of J. F. Green for People's Bank of De Soto, the sum of $14.65, being balance due me on read-justment and settlement of account between said People's Bank and myself.

"De Soto, Mo., Dec. 15, 1900.      "C. D. YANCEY."

After stating the alleged erroneous items, the replication charges that Yancey signed the receipt with no intention of relinquishing his claim against the bank for all that was owing to him, but simply in acknowledgment of the check for $14.65 which Green handed Yancey to correct the settlement. It is alleged that Yancey signed the receipt in Green's residence under an electric light which was too dim to read by (though in fact there was no electric light in the house) and was induced to sign it by Green's false statement that it was only an acknowledgment of said check and given to rectify the adjustment.

This suit was brought in the circuit court of Ripley county where the land lies, but was subsequently removed to Iron county by agreement and tried there. When called for trial appellant demanded a jury and one was impaneled.

At the conclusion of the evidence appellant's counsel tendered a long instruction setting out the facts of the controversy between the parties according to the testimony of the appellant, which the court refused and gave instead an instruction that, under the pleadings and evidence, the finding and judgment should be for the defendant. Judgment was thereupon entered dismissing appellant's bill, but whether on a verdict returned by the jury or independent of their verdict is

obscurely shown by the abstracts of the record filed in this court; and it is only by charity that this case can be reviewed, as the appellant has not perfected his appeal satisfactorily, although additional time was granted him for that purpose.

*William H. Righter* for appellant.

(1) This was an action at law. The issues joined were purely issues of fact. The testimony was conflicting and should have been left to the jury for determination. The plaintiff had made out a prima facie case. Woods, Assignee v. Ins. Co., 50 Mo. 114; Mathews v. St. Louis Grain Elevator Co., 50 Mo. 149. The court should have permitted the jury to pass on the controverted question of fact in relation to the defense. Williamson v. Fisher, 50 Mo. 199; Taylor v. Short, 38 Mo. App. 24.

*James F. Green* for respondent.

(1) The action of the court in withdrawing the case from the jury and deciding it, was proper, as the action was an equitable one to enforce a vendor's lien and not triable by a jury. Bronzon v. Wauzer, 86 Mo. 408; Hall v. Haynes, 145 Mo. 614; Snell v. Harrison, 83 Mo. 651; Price v. Reed, 38 Mo. App. 498; Gay v. Ihm, 69 Mo. 584; Robinson v. Dryden, 118 Mo. 534. (2) Plaintiff having signed the receipt acknowledging payment in full, after a full opportunity to investigate, is precluded from disputing the same. Campbell v. Van Houton, 44 Me. App. 231; Crim v. Crim, 162 Mo. 552; O'Bryan v. Kinney, 74 Mo. 125; Rothchild v. Frensdorf, 21 Mo. App. 318; School District v. Insurance Co., 61 Mo. App. 597; Penn v. Brashear, 65 Mo. App. 24; Taylor v. Fox, 16 Mo. App. 527; Gwin v. Wagoner, 98 Mo. 315; Kellarman v. Railroad, 136 Mo. 177. (3) The finding of a chancellor in equity cases will

be deferred to by an appellate court, unless he has manifestly disregarded the evidence. The defense of payment was fully sustained by the evidence, and the judgment was for the right party. Hartly v. Hartly, 143 Mo. 216; Snell v. Harrison, 83 Mo. 658; Hodges v. Black, 76 Mo. 537; Ryle v. Jones, 78 Mo. 403; Swon v. Stevens, 143 Mo. 384; Shanklin v. McCracken, 151 Mo. 587.

GOODE, J.—Just what kind of an action we have before us is uncertain. In fact, the petition shows that the appellant, although he is a lawyer of thirty years standing, did not know, or, at least, did not state exactly what the transaction was between him and the bank in regard to the land in controversy. It shows, likewise, that he was in doubt as to the relief to which he was entitled. The petition charges that the land was conveyed to the bank by a deed absolute in form but intended as a mortgage, and that appellant had the right to redeem any time within two years after the date of the deed. No relief is asked which corresponds to that statement of the affair; for the appellant neither desires nor prays to redeem. The other allegations are that the land was sold to the bank for $750 and that more than five hundred dollars of the purchase price is still unpaid which the appellant ought to recover, for which he prays judgment and that a vendor's lien be declared against the land.

The same uncertainty in regard to the facts of the controversy appears in the appellant's testimony. He swore, among other things, as follows:

"The bank bought the property Mr. Hough conveyed to me and I made a deed direct to the bank on December 22, 1898, the bank agreeing to surrender to me all of the notes, and on that day paid me $15. I opened an account with the bank leaving the balance of the purchase money in the bank and continued to draw

it out as shown by the checks and receipts to be offered in evidence, being the same checks and receipts mentioned and fully set out in the replication. In January, 1899, the bank notified me that it would not pay any more money on account of the property until the questions Judge Green had raised about the title should be settled.''

Immediately after that testimony he gave this:

''It was my understanding that I could pay up the $750 with interest and have the property reconveyed to me within two years. I said I would give a mortgage, but Mr. Coxwell said it was not necessary, that they would turn it over to me at any time I wanted it.

''Q. By the Court: Did you ever offer to pay the whole amount of indebtedness? A. I did, and have demanded a statement of my account several times. They have kept on charging me with interest, but refuse to reconvey.''

So far as the point is concerned that the court erred in withdrawing the issues from the consideration of the jury, and deciding them himself, it is obviously not well taken. In any view of the petition or of the appellant's testimony, this suit is in the nature of a bill in equity to have the deed to the bank declared a mortgage so Yancey may redeem, or to enforce a vendor's lien. In either aspect it is as pure a chancery proceeding as can arise under the code and is not triable by jury, except that the judge below could, if he desired, have taken the jury's verdict on the issues as advisory. Snell v. Harrison, 83 Mo. 651; Bronson v. Wanzer, 86 Mo. 408. But inasmuch as he was not bound to adopt the findings of the jury as the basis of his judgment, but was at liberty to disregard them, it was not error for him to direct a verdict for the bank and then enter judgment accordingly. Cox v. Cox, 91 Mo. 71; Nelson v. Betts, 21 Mo. App. 219. Our statutes provide that all actions to recover money or specific personal property shall be

tried by jury unless a jury trial is waived and the issues referred. R. S. 1899, sec. 691. This is not a case of that kind. Instead, it is one in which the pleadings called for a judgment in the form of a decree in equity. We, therefore, overrule appellant's exception to the court's refusal to submit the issues to the determination of the jury.

The impression left on our minds is that the land was originally conveyed to the bank to secure the notes Yancey owed, with the understanding that he might procure further accommodation to the amount of $750. If this is true, the present suit will not lie, because, as stated, Yancey neither offers nor asks to redeem.

But as the bank contends it made an outright purchase of the land, we will consider the case from that point of view, and so regarded the question is: Has the bank fully paid Yancey the purchase price, or is there a balance owing for which he should have judgment and the enforcement of his vendor's lien?

As to this question we are inclined to defer to the finding of the circuit judge, who observed the demeanor of the witnesses and was in a better position to weigh the evidence than we are. Yancey's testimony is so inconsistent that it makes but little impression in favor of the justice of his cause. It may be said, too, that when the evidence is sifted, most of the sums claimed to have been advanced by the bank are conceded by Yancey; so that but a small balance is coming to him, if we accept his testimony. Judge Green and M. S. Coxwell, the cashier of the bank, both swore positively that a full settlement of the matters in dispute between Yancey and the bank took place early in December, 1900. The parties met in the office of the bank at De Soto, and various payments were read off by Yancey, set down on a memorandum by Green, and their total cast, with the result that the bank was shown to be entitled to credits on its account with Yancey to the amount

of $761.40.   On this showing Yancey had been over-
paid, but he wanted ten dollars to defray his expenses
in going to his home in Ripley county and Coxwell gave
him that sum and surrendered his notes.   Yancey makes
a lame explanation of the settlement, his testimony in
regard to it being as follows:

"Q.   Now tell the jury of that transaction between
you and Judge Green concerning that receipt; tell them
the circumstances under which you signed it?   A.   Yes,
sir.   I settled with the People's Bank on the first day
of December, 1900.   I asked for a statement of my ac-
count but he never gave it.   We sat down and Judge
Green called off the items and set them down.   I never
did see these receipts and checks until they were deliv-
ered to me after the settlement.   When I got them I
found that there was a mistake of $14.65.   I waited a
few days to see Judge Green and finally went to his
house.   He took these papers (referring to slips pin-
ned to express receipts and telegrams, marked 'debit
Yancey $5.07,' forged check for $5.25, and check for
$15, and receipt for $15 of date December 31, 1898)
and went over to Mr. Coxwell's and when he returned
he said Mr. Coxwell did not want any trouble and said
for me to pay you whatever you want, and then sat down
and wrote out that check for $14.65, and I signed the
receipt."

After swearing positively that the settlement was
made and that he afterwards found errors amounting
to $14.65 which Green paid him by the direction of the
bank, taking his receipt in full to avoid further annoy-
ance, Yancey now contends the receipt only covered
the payment of a sum due him because of certain errors
which had been made.   But this confesses the entire
contention of the bank, for it admits there was a settle-
ment and that mistakes occurred in it which were af-
terwards corrected.   In addition to the above facts, it
was proven that on November 22, 1900, nearly two years

after the original deed was executed, Yancey made another deed conveying the same land to the bank in order to correct a mistake in the description of the land in the first deed. At that time he made no claim that the land had been conveyed by way of mortgage or that he was not fairly dealt with.

Another contention of Yancey's is that he ought to have credit for the price of certain timber which was sold off the land for $175 after the bank got it. How he is entitled to timber money if he had sold the land previously for $750, as he now insists he had in seeking judgment for an alleged balance of the purchase money, he does not explain.

The evidence fully warranted the judgment given by the circuit court and it is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.