ALICE STRATTON, *as Administratrix, etc., Appellee,* v. C. B. ROTROCK, *Appellant.*

No. 16,737.

### SYLLABUS BY THE COURT.

1. MORTGAGES—*Deed Taken as Security for Purchase Price.* According to the findings of fact in this case it was clearly the intention of both Stratton and Rotrock that when Stratton took the deed to the land in question he took it as security for the repayment of the purchase price of the land, with interest, from Rotrock to him. *Held,* such a deed was a mortgage.

2. —— *Conversion of Deed for Purchase Price into Absolute Conveyance—Subsequent Contract.* The deed being originally intended as a mortgage, neither the failure of Rotrock to pay the debt nor any act or intent of Stratton could convert it into an absolute conveyance, in the absence of a subsequent superseding contract.

Appeal from Ottawa district court. Opinion filed March 11, 1911. Reversed.

*G. W. Hurd,* and *Arthur Hurd,* for the appellant.

*F. D. Boyce,* and *E. C. Sweet,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: The plaintiff, as administratrix of the estate of her deceased husband, George Stratton, brought this action for judgment on several promis-

sory notes executed by the defendant to the husband in his lifetime. The defendant answered (1) by a general denial; (2) by alleging partial payments not credited; (3) by setting up as a counter claim a promissory note executed by Stratton to him; (4) that in the year 1900 he bought a certain tract of land for $1100; that Stratton loaned him the entire purchase price thereof, and by mutual agreement a deed to the land was made by the seller direct to Stratton, to secure the payment of the $1100; that defendant entered into the possession of the land, and continued therein until the land was again sold; that on November 24, 1902, he paid to Stratton all the interest on the $1100 to that date; that on January 20, 1906, defendant sold the land for $3000, and Stratton and wife executed to the purchaser a deed therefor, and Stratton received the full $3000, but never accounted to the defendant therefor; and that thereby Stratton became indebted to him in that sum. The reply was a general denial.

The trial was to the court, and the adverse claims of the parties were determined to the apparent satisfaction of each, except as to the fourth defense. Relating to this defense the court made the following findings of fact:

"(8) Prior to June 23, 1900, one Thomas Rogers was the owner of the following-described real estate situated in Ottawa county, state of Kansas, to wit, the southeast quarter of section thirty-five (S. E. 1/4 S. 35), in township eleven (T. 11) south, of range four (R. 4) west of the 6th P. M., and had the same listed with H. F. Jackman, a real-estate agent in Minneapolis, Kan., for sale. Said Jackman approached the defendant, Charles B. Rotrock, who was a tenant on said land, and tried to sell the same to him. Rotrock stated, in substance, that he could not buy the land without assistance, but would see George Stratton and perhaps he would help him buy it. Afterward Stratton and Rotrock went to Jackman's office and talked with Jackman about Rotrock buying this land, and it was proposed that Stratton should furnish the money to enable Rotrock to buy it and should take a mortgage back

from Rotrock for the money so advanced. Jackman suggested to Stratton that it would be better for him to have the deed made out in his own name, since he was advancing the money, than to take a mortgage. Stratton and Rotrock went out of the office and afterward returned, and Stratton told Jackman to have the deed made out to him (Stratton). Stratton paid four hundred dollars in cash and gave a note, secured by a mortgage on this land, for $700 to Rogers, and in September of the same year paid the mortgage.

"(9) There were no buildings upon the land, but the defendant, Charles B. Rotrock, farmed the land and broke out a part that had never been plowed and gathered the crops therefrom, and did not deliver any of the grain grown thereon to Stratton, and has continued in the possession of the land until it was sold at the time referred to in the next succeeding finding.

"(10) Rotrock listed the land referred to in the preceding finding for sale in 1903, with Babcock & Steele, who were real-estate agents in Minneapolis, Kan. He afterward, on two or three occasions, ordered them to change the price at which the land was listed. They found a purchaser for the land, and in looking over the records discovered that, on the face of the records, the title appeared to be in George Stratton. They went to Stratton about it, and Stratton said that Rotrock did not have any right to list the land that was his, and in explanation said that Rotrock had found the land but did not have the money to pay for it, and that he (Stratton) advanced the money and that Rotrock was to pay him as he could, but that he had never paid him a dollar, and Stratton said he did not consider that Rotrock had any interest in the land. That Babcock & Steele then asked Stratton to list the land with them for sale, and he did so, and they sold the land for $3000, and, after deducting $100 for commission, paid the other $2900 over to Stratton.

"(11) After the land was sold, as stated in the preceding finding, Babcock & Steele notified Rotrock that the land was sold, and, although he lives near and they saw him frequently, he never said anything to them about the money and he never made any demand on Stratton for it. The sale was made in January, 1906, but the last payment was not made until April, 1906.

"(12) George Stratton died in June, 1906, at Minneapolis, Kan. He had been sick for several months,

and Rotrock called to see him once, but was unable to see him at that time."

The court also made the following conclusions of law relating to the fourth defense:

"That the understanding between Rotrock and Stratton by which the purchase price for this land in section 35, described in the defendant's answer, did not make such deed a mortgage, but, at most, only constituted Stratton as a trustee of an express trust, and, not being in writing, was not enforceable."

But one question is presented in this case, viz.: Was the deed of the land originally given to Stratton intended to be an absolute conveyance to Stratton, or was it intended as a mortgage to secure the payment to him of the purchase price ($1100), which Rotrock had agreed to pay the grantor, Rogers? The question as to the real character of the instrument usually arises between the grantor and grantee in a contract purporting to be an absolute conveyance. In this case, however, had the defendant fully performed the conditions during the life of Stratton, it would have required a deed from Stratton and wife, or a decree in chancery, to invest Rotrock with title that could be made of record. The case of *Hubbard v. Cheney,* 76 Kan. 222, sustains the principle in this case. Cheney purchased a tract of land, and he and his wife were named as grantees in the deed. The consideration paid for the land was $1600, of which Cheney borrowed $300 from his wife, it being agreed between them that the deed was to be her security for the repayment of the loan. He in time paid the debt to his wife. The first paragraph of the syllabus, holding the deed in fact a mortgage as to the wife, reads:

"A deed purporting to convey land to a husband and wife jointly, where the wife is named as a grantee to secure payment of a sum of money which she loans to her husband to make up the purchase price of the land, is, as to the wife, no more than a mortgage; and when the loan is paid her interest terminates and his title

becomes clear and complete, and the fact that the deed was intended to operate as a mortgage may be shown by parol evidence."

(See, also, *Le Comte v. Pennock,* 61 Kan. 330; *Abrams v. Abrams,* 74 Kan. 888; 27 Cyc. 979.)

. In the Hubbard case, as in this, the deed, as between the grantor and grantees, was in fact an absolute conveyance, but as to one grantee was intended as, and was in fact, only a mortgage to secure a debt to the other grantee. In the opinion it was said:

"Equity, looking back of forms to the substance of things, regards the transaction as the parties themselves regarded it, namely, the giving and taking of security for borrowed money." (76 Kan. 225.)

On this principle we think the deed, as between the grantee, Stratton, and Rotrock, should be held a mortgage, on the facts found by the court. The deed having been originally intended and accepted as security for a debt, neither the failure of Rotrock to pay the debt nor any act or intent of Stratton could convert it into an absolute conveyance, in the absence of a subsequent superseding contract. It was said in *Le Comte v. Pennock,* 61 Kan. 330:

"An instrument in form an absolute conveyance of real estate, given to secure the payment of a debt, is no more than an equitable mortgage, and nothing but a new agreement can convert it into a deed or transfer of title." (Syl. ¶ 1.)

(See, also, *Winsor v. Winsor,* 78 Kan. 885.)

The land was sold by consent of Stratton and Rotrock, Stratton making the deed of conveyance. It remains only to determine the amount of the debt to Stratton at that time.

The judgment is reversed and the case is remanded, with instructions to determine the amount of the indebtedness from Rotrock to Stratton at the time of the sale of the land and deduct such sum from the $2900 received by Stratton therefor, allowing interest at

seven per cent on both such balances, and on the amount heretofore found in favor of the plaintiff, off-set the respective claims, and give judgment accordingly.