JAMES A. JOHNSTON ET AL., APPELLANTS, v. BANK OF POPLAR BLUFF, RESPONDENT.*

In the Springfield Court of Appeals. April 7, 1927.

*Corpus Juris-Cyc. References: Covenants, 15CJ, p. 1255, n. 33, 34 New; Equity, 21CJ, p. 594, n. 85; Estoppel, 21CJ, p. 1093, n. 35; Evidence, 22CJ, p. 1162, n. 67; Mortgages, 41CJ, p. 333, n. 13; p. 350, n. 39; p. 352, n. 40.

*J. C. Sheppard* for appellant.

*Abington, Abington & Freer* and *Henson & Woody* for respondent.

BAILEY, J.—This is an action to recover money paid out by reason of alleged breach of the covenant against incumbrances contained in a general warranty deed executed and delivered by defendant to plaintiff James A. Johnston, conveying a part of Lot 125 in the City of Poplar Bluff. By the petition it is alleged that defendant corporation made the warranty deed to the property above referred to on the 3rd day of June, 1912; that the deed contained the granting clause, "grant, bargain and sell," and also the usual covenant against incumbrances; that at the time of the execution of the deed the premises were subject to a deed of trust, of record, dated April 8, 1908, given by J. C. Chambers and wife to Charles Mills for the Butler County Bank, securing a note in the sum of $635; that by reason of said incumbrance the plaintiffs were compelled to pay

$1075.13, being the principal sum with interest to July 24, 1918. Plaintiffs further allege that at the time the said deed was delivered the property was subject to the lien of certain paving tax bills and by reason thereof they were compelled to pay the sum of $475, amounting with interest to $683.14. Judgment was asked in the total sum of $1758.27. The answer sets up as a special defense that prior to April 27, 1912, the Simmons Grocery Company, a Corporation of which plaintiffs were the principal stockholders, was indebted to defendant in the sum of $2500; that on said date James Johnston, representing himself and his co-plaintiff D. M. Johnston, purchased the property in question from J. O. Chambers and caused the said Chambers to make a deed to defendant to secure the $2500 debt of the Simmons Grocery Company, the assets of which, had been appropriated by plaintiffs to their own use; that defendant thereby became possessed of the legal title to said premises in trust, however, for plaintiffs who held the equitable title thereto; that defendant received no consideration for the transfer except the payment of said indebtedness. The record fails to show any reply was filed to this answer. On trial to a jury the verdict and judgment was for defendant and plaintiffs have appealed.

To sustain the issues on their part plaintiffs offered in evidence the warranty deed from defendant, which was regular on its face, containing the covenant against incumbrances, as alleged. The record showing the Chamber's Deed of Trust, dated April 8, 1908, made to a trustee for the Butler County Bank securing a note in the sum of $635, together with the entry of satisfaction thereof, dated July 24, 1918, and the lien of the paving special tax bills, were likewise shown. D. M. Johnston, one of the plaintiffs, testified that plaintiffs paid off the Chamber's incumbrance of $635 and paving taxes to the amount of $474. Plaintiffs further proved a written contract was entered into April 27, 1912, between the Bank of Poplar Bluff (defendant), James A. Johnston (plaintiff) and J. O. Chambers (who was also a stockholder in the Grocery Company), which contract, after reciting that Chambers and wife had conveyed the property in question to defendant in order to pay and satisfy their note in the sum of $2500, provided as follows: "the said Bank of Poplar Bluff agrees to convey said property, within six months from date, to James A. Johnston, upon the payment to said Bank of Poplar Bluff, by said James A. Johnston, the sum of twenty-five hundred dollars; and the said James A. Johnston hereby agrees to pay to said Bank of Poplar Bluff, the sum of twenty-five hundred dollars within six months from this date."

Defendant, to sustain the defense pleaded, submitted evidence tending to prove a state of facts as follows: Prior to the time the contract above referred to was entered into between plaintiff James

A. Johnston and J. O. Chambers and defendant, plaintiffs and J. O. Chambers were jointly interested in the Simmons Grocery Company and controlled its affairs. The Simmons Grocery Company became indebted to the State Bank of Poplar Bluff in the sum of about $3000 and in May, 1912, this indebtedness had been reduced to $2500. At that time Chambers owned the real estate in question. Prior thereto Chambers and wife had given their note to plaintiffs, who were associated with Chambers in the grocery business, for $2500, securing the same by a deed of trust on this same real estate; plaintiffs transferred this note and deed of trust to the State Bank as collateral security for the indebtedness of the Simmons Grocery Company in which all were jointly interested. Thereupon it was decided to change the Simmons Grocery Company account to defendant Bank and after certain negotiations the contract dated April 27, 1912, heretofore set out, was entered into. In accordance with the terms of this contract the property owned by Chambers was deeded by him to defendant bank, the Chamber's note was satisfied and plaintiffs gave their note for $2500 of date May 1, 1912, to defendant, taking up the Simmons Grocery Company's note of the same amount. No money was actually paid by defendant for the Chambers deed. The note given by plaintiffs to defendant was not paid in full, although reduced in amount, at the time the warranty deed involved in this case was delivered to plaintiffs by defendant. This deed was dated June 3, 1912, and acknowledged June 30, 1914, when it was delivered and recorded.

There was evidence tending to show plaintiffs collected the rents from the property during the period the legal title was in defendant and also paid the interest on the note of $635, being the same note the lien of which plaintiffs claim constituted a breach of the covenant against incumbrances in this action. All this evidence was introduced over plaintiffs' objections.

It is defendant's contention that it had a right to prove the warranty deed from Chambers to it was in fact a mortgage; that it held the property merely as security for the $2500 note executed by plaintiffs and, upon the payment thereof, plaintiffs were entitled to a conveyance of the property; that defendant merely held the legal title to said property, whereas the equitable title was in plaintiffs and, therefore, defendant is not liable on the warranty or covenant against incumbrances contained in the deed. It is plaintiffs' contention that the parol evidence offered by defendant was inadmissible because it tended to contradict and vary the terms of the written contracts, including the deeds, offered in evidence. It is also contended that the issues here involved are equitable and should not have been submitted to the jury. Error is further assigned in the giving and modifying of instructions.

The important problem in this case relates to the question of the competency of the parol evidence offered by defendant tending to prove the Chambers deed to defendant was in fact an equitable mortgage and, that being established, whether or not defendant, occupying the position of a mortgagee, would be bound by the covenants of warranty and against incumbrances contained in a deed made by it to plaintiffs, occupying the position of mortgagors.

As an exception to the general rule that oral testimony cannot be used to vary the terms of a valid written contract, the law is well settled that a.deed, absolute on its face, may be proven by parol evidence to have been intended as a mortgage. This doctrine has been promulgated at times with various limitations requiring a foundation laid on the equitable ground of fraud or mistake, but what is known as the unrestricted doctrine is now the prevailing rule in the United States. Under this theory no such equitable grounds are necessary in order to make parol evidence competent for the purpose of showing the true character of the instrument. [19 R. C. L. 250; L. R. A. 1916-B Note, p. 47, Art. 15.] The unrestricted doctrine prevails in Missouri. [Carson v. Lee, 281 Mo. 166, 219 S. W. 629; Gibbs v. Haughowout, 207 Mo. 384, 105 S. W. 1067; Duell v. Leslie, 207 Mo. 659, 106 S. W. 489.]

In the case of Carson v. Lee, supra, it is said that ''A condition indispensable to hold a deed to be a mortgage is that there must have been a debt to secure, or some liability against which the grantee is to be guarded.'' All the Missouri cases dealing with the subject are the same effect. That being true, we must first determine whether or not there was an existing debt which would determine the character of the Chambers deed. It is at once obvious that the relation of debtor and creditor did not exist between Chambers (the grantor) and defendant bank (the grantee) in the deed made for the very purpose of extinguishing the indebtedness of Chambers. That such was a fact is clearly demonstrated by reference to the written contract entered into between plaintiff, James A. Johnston, the defendant bank and J. O. Chambers, by the terms of which defendant agreed to pay and satisfy the Chambers note of $2500. There was no other personal indebtedness of Chambers and in so far as his interest is concerned there could have been no mortgage. [Turner et al. v. Kerr, 44 Mo. 429.] The facts in this case, however, raise the further question as to whether or not parol evidence is admissible to show a deed, absolute in its terms, was in fact a mortgage when the transfer was made, not by the one indebted to the grantee in the deed, but by a third person. We have been unable to discover any case in which that identical question has been passed upon by the courts of this State. We do find a number of decisions by the Courts of sister states which we believe are decisive of the

question. In Phelon v. Fitzpatrick, 84 Wis. 240, 54 N. W. 614, the defendant, as owner of the equity of redemption, procured another to bid in the property at a mortgage sale, advance the money and take the title in his own name under an agreement to re-convey upon payment of the money so advanced. The court, in holding this transaction constituted an equitable mortgage, used this language: "It is well settled that whenever property is transferred, no matter in what form or by what conveyance, as mere security for a debt, whether from the debtor or from some other person at his request, the person to whom the transfer is made takes merely as a mortgagee, and has no other rights or remedies than the law accords to mortgagees."

In Fisk v. Stewart, 24 Minn. 977 (Syl.), it is said, "Neither is it at all important as affecting the rights and obligations of the party taking the conveyance, that he received it from another who happens to hold the legal title, instead of the borrower, in whom is vested the equity of redemption, so that it is obtained at the instance and request of the latter and for his use and for his benefit."

In Hall v. O'Connell, 52 Or. 164, 95 Pac. 717, the law is stated thus: "The rule that a deed absolute on its face, given as security, may be shown by parol to be a mortgage, applies equally to the case of a purchaser borrowing the purchase money, and causing the title to pass directly from the vendor to the creditor as security for the loan. It is a question of the intention of the parties and not the form of words or of the instrument. If the equitable interest is in the debtor, equity will protect him." To the same effect are Smith v. Crèmer, 71 Ill. 185; Bashinski v. Swint, 133 Ga. 38; Stralton v. Rotrock, 84 Kan. 198, 114 Pac. 224; Carr v. Carr, 52 N. Y. 251; See also R. C. L. 19, p. 252, Art. 18.

In the light of these decisions and the ordinary principles of equity, we hold that it was competent to prove by parol evidence that the deed made by Chambers to defendant was a mortgage, although the plaintiffs, and not the grantors in the deed, were the ones indebted to defendant. The contract between the three parties heretofore referred to was sufficient in itself to show the true relation and understanding of the parties. By its very terms plaintiffs obligated themselves to pay defendant $2500 and defendant obligated itself to convey the property to plaintiffs upon such payment. The evidence was clear, cogent and undisputed that the Chambers deed was in fact a mortgage.

Considering it as an established fact that the defendant held this property as mortgagee under the deed from Chambers, is defendant bound by the covenants in its warranty deed to plaintiffs who may be said to occupy the proposition of mortgagors? Defendant's theory at the trial was, that if it held the property merely as a

security for a debt owing from plaintiffs to defendant, then defendant was not liable, and the court so instructed the jury. In other words, defendant assumes that mere proof it held only the legal title to the property absolves it from all liability on its covenant against incumbrances contained in its deed to the holder of the equitable title. No authorities are cited to support this assumption. The warranty deed made by defendant recited a consideration of $2500. It is always competent to show the real consideration in a deed by oral testimony unless the consideration is so stated as to indicate the recital thereof is intended as the real consideration, but it is not competent to show there was no consideration. When a deed recites a valuable consideration, the grantor is estopped from proving there was only a good consideration, or no consideration whatever, in order to destroy the effectiveness of the deed. [See v. Mallonee, 107 Mo. App. 721, 82 S. W. 557; Laclede Laundry Co. v. Freuderstein, 179 Mo. App. 175, 161 S. W. 593; Henderson v. Henderson, 13 Mo. 151; MacLeod v. Skiles, 81 Mo. 595; Jackson v. Railroad, 54 Mo. App. 636; Yates v. Burt, 161 Mo. App. 267, 143 S. W. 73; Williams v. Johnson, 177 Mich. 500, 143 N. W. 627; L. R. A. 1916A. 216 and note; Shehy v. Cunningham, 81 Ohio St. 289, 25 L. R. A. 1194 and note; Brady v. Peck, 34 S. W. 906 (K. Y.).] The foregoing authorities and many others develop the rule that extrinsic evidence may not be used to show there was no consideration for a deed so as to prevent the operation of the solemn covenants in the deed contained. It follows that the defense of no consideration was not available to defendant and evidence tending to prove the warranty deed was purely voluntary and without consideration was clearly inadmissible.

It is our opinion defendant has mis-conceived its defense, if any, to this action. It is well settled in this State that if the owner of real estate conveys it to another by general warranty deed containing the usual covenants of seizin and against incumbrances, and his vendee gives back a deed of trust or mortgage securing a part of the purchase price containing like covenants of warranty, the vendee does not thereby release the vendor from liability on the original covenants in the warranty deed. [Crosby v. Evans, 231 Mo. 202, 219 S. W. 948.]

The Crosby case reviews the authorities from many States on that question. Among other cases cited is that of Willis v. McGough & Company, 56 Ga. 198, which we consider particularly in point here. In that case the defendants, who were in contemplation of law, mortgagees of certain real estate (as defendant is here) were held not to be bound by covenants in a deed they gave by way of release to their grantors (in a deed intended to be a security and not an absolute conveyance) to a subsequent grantee of said mortgagor.

The theory of the court was that the mortgagor could not sue on said covenants, because they were the same as he had made to the mortgagees; and, therefore, the subsequent purchaser could not. In the case at bar plaintiff's position is the same as it would have been had they been the grantors in the deed from Chambers to defendant, provided that deed was made to secure their obligation to defendant. The authorities heretofore cited sustain that proposition. That fact being established, if the deed from Chambers to defendant contained like covenants of warranty and against incumbrances as were contained in the deed from defendant to plaintiffs, defendant should not be held liable. The case, however, was not tried on that theory. The record fails to reveal the provisions of the deed from Chambers to defendant but merely recites the deed was introduced in evidence; hence we are unable to determine whether or not the Chambers deed was regular and contained a covenant against incumbrances without exception. It follows the court erred in its instruction relative to the effect of defendant holding only the legal title.

On the question of error in trial by jury, it may be said the trial court may submit the issues in an equity case to a jury and either adopt the jury's findings or reject them. [Yancey v. Bank, 101 Mo. App. 605, 615, 74 S. W. 117.]

For the reasons given the judgment is reversed and cause remanded.

*Cox, P. J.*, and *Bradley, J.*, concur.