Georgia **EDWARDS**, Mary E. Hawkins, Birdie May Holmes, Viola May Miller, Respondents,

v.

Jasper **MAPLES**, Nadine Washington, Francis A. Gilbert and Marie Gilbert, Appellants.

**No. 50534.**

Supreme Court of Missouri,

Division No. 1.

April 12, 1965.

Henry BalkenBush, Linn, for respondents.

William R. Clark, Columbia, for appellants.

HENLEY, Judge.

Unusual in that it was tried before a jury, this suit in equity to set aside two deeds resulted in a decree for the plaintiffs from which defendants appeal.

As indicated above, title to real estate is involved; therefore, jurisdiction is in this court. Article V, Section 3, Constitution of Missouri, V.A.M.S.

The deeds in question are: a warranty deed dated October 13, 1956, filed for record and recorded on the same day, from Eva Maupin Jacobs, single, to Jasper M. Maples, one of the defendants, describing approximately two acres of unimproved land in Osage County; and, a deed dated December 26, 1959, from Jasper Maples to Francis and Marie Gilbert, two of the defendants, describing the same land. Mrs. Jacobs died in October, 1957, while residing in Jefferson City at the home of her niece, Nadine Washington, the fourth defendant.

Alleging that they are the heirs at law of the said deceased (who allegedly died intestate), plaintiffs state as grounds for setting aside the deed to Maples that the signature of Mrs. Jacobs on that deed is a forgery. The words of plaintiffs' petition are: "* * * [the] purported deed was executed by some person other than the deceased Eva Maupin Jacobs * * *; that the purported signature on aforesaid deed is not the signature of Eva Maupin Jacobs. * * *" Plaintiffs also allege that Mrs. Jacobs was senile, infirm, aged and mentally incompetent and incapable of understanding the nature, extent and value of her property; that Nadine Washington was the confidential companion, nurse and advisor of Mrs. Jacobs and that Mrs. Washington and Maples entered into a conspiracy to cheat and defraud Mrs. Jacobs out of her property. There is no allegation that Mrs. Jacobs was on the date in question incompetent to execute the deed to

Maples or that Mrs. Washington and Maples did cheat and defraud her out of her property. As the only ground for setting aside the deed from Maples to the Gilberts plaintiffs state the conclusion " * * * that any reasonable inquiry on the part of [the Gilberts] would have informed them of the mental condition of [Mrs. Jacobs] at the time of the purported deed by her to [Maples]."

The decree recites that by agreement of the parties the question to be submitted to the jury was: "Did, or did not the deceased Eva Jacobs known also as Eva Maupin Jacobs sign the deed in question [?]." The question is descriptive of plaintiffs' trial theory. An instruction was given in language not quite so clear and simple as the question, and the jury returned a verdict finding, " * * * that * * * Eva Jacobs * * * did not sign the deed * * *." The decree cancelling both deeds was based on this finding by the jury and the further finding by the court that since Maples had not acquired title, his deed to the Gilberts did not convey title to this land. To say the least, there was a total failure of any allegation or proof that would warrant setting aside the deed from Maples to the Gilberts.

■ Equity cases are rarely tried to a jury. And in those rare instances where an issue is submitted to a jury the verdict is advisory only. The court may accept or reject the verdict and, if accepted, it is the court's own finding on the fact issue rather than that of the jury. On review of an equity case we consider the issues as having been determined by the court and are not bound by the finding of a jury. Adams v. Adams, 348 Mo. 1041, 156 S.W.2d 610, 615 [8]; Northrip v. Burge, 255 Mo. 641, 164 S.W. 584, 590 [9]; Pixlee et al., v. Osborn, et al., 48 Mo. 313, 316 [1]; Johnston, et al., v. Bank of Poplar Bluff, 221 Mo.App. 127, 294 S.W. 111, 114 [8].

The one point briefed and argued by defendants is: "The trial court erred in finding for the [plaintiffs] as the evidence

was insufficient to support a finding of forgery of the signature of the deceased, Eva Jacobs, at the time of the execution of the deed, October 13, 1956."

■ "Upon appeal, we review the entire record de novo and reach our own conclusions as to the weight and value of the evidence, giving deference to the findings of the chancellor who saw and heard the witnesses. But the rule of deference does not relieve us of the duty to weigh the evidence, reach our own conclusions, and, if upon review of the whole record, we conclude that the evidence does not meet the standard required, we must so say." Miller v. Minstermann, Mo., 266 S.W.2d 672, 679 [2] and cases there cited. The standard of evidence required in a suit to set aside a deed is that it be clear, cogent and convincing for "The cancellation of a deed is the exercise of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case." Edinger v. Kratzer, Mo., 175 S.W.2d 807, 813 [11]; Lastofka, et al. v. Lastofka, 339 Mo. 770, 99 S.W.2d 46, 54; Bross v. Rogers, Mo., 187 S.W. 38.

■ Bearing in mind this standard of evidence in examining the record, we must also keep in mind that the burden is on the plaintiffs to establish that the signature on the deed from Mrs. Jacobs to Maples is not that of the grantor or that it was executed by some person other than her. Elliott v. Sheppard, 179 Mo. 382, 78 S.W. 627.

Plaintiffs' evidence to support their claim that the signature on this deed was not that of Mrs. Jacobs was confined to the testimony of Georgia Edwards. Mrs. Edwards, one of the plaintiffs, a sister of Mrs. Jacobs, testified that she received some letters from her sister in 1920, "But I didn't keep those letters, but I know that ain't her handwriting. I know that much." Immediately after that statement the witness was handed what was identified by counsel's question as "a piece of paper" and asked whether "that" was the signa-

ture of Mrs. Jacobs. Her answer was: "That is not my sister's handwrite. I can remember that much to know that my sister could write better than that. A little. Not too much." The record does not disclose whether this "piece of paper" was the deed in question, but we will assume that it was. The witness was uncertain as to whether she had last seen her sister in the year 1956 or 1957.

The balance of plaintiffs' case in chief was made up of the testimony of two nieces of the deceased, one of whom was a plaintiff. The extent of their testimony was that Mrs. Jacobs was in poor health in 1956, and in their judgment she was not physically able to sign her name. One, Viola Miller, last saw Mrs. Jacobs on May 30, 1956; the other, Vonona Brown, said she visited Mrs. Jacobs several times a week and she "imagined" she visited her in October, 1956. Neither was acquainted with her signature.

Plaintiffs' evidence in rebuttal consisted of very brief descriptions of the size of Mrs. Jacobs in 1956 and 1957, in these words: that she was "not a fleshy person"; that she was "tall and slender", "slim and thin", "skin and bones." These descriptions were apparently in rebuttal to a description of Mrs. Jacobs given on cross-examination of the person who took the grantor's acknowledgment to the deed to Maples. This person, Clem C. Gove, an attorney and Judge of the Probate Court of Osage County, said on cross-examination, " * * * I'm pretty poor on guessing people's weights and size, Henry. I would judge she would be about five [feet] five [inches], five [feet] six and a half [inches]", * * * "Q. Was she fleshy? A. Well, she was a little on the heavy side." Nadine Washington, the niece with whom Mrs. Jacobs lived for several years, had testified on cross-examination that Mrs. Jacobs was "sort of tall and thin", that she was "five [feet] six [inches] or something" and "weighed about 140 or 145 pounds." Also, Jasper Maples, on cross-examination had described Mrs. Jacobs as "a medium-like woman, she wasn't too fleshy." The rebuttal evidence of brief descriptions quoted in the first part of this paragraph was the full extent of plaintiffs' efforts to show that the deed to Maples was executed by some person other than Mrs. Jacobs. None of plaintiffs' witnesses testified that they saw Mrs. Jacobs on the day this deed was executed; there was no evidence that she was not on the morning of that day in the office of the probate judge who prepared the deed and took her acknowledgment; there was no evidence of a conspiracy between Maples and Nadine Washington to cheat and defraud Mrs. Jacobs out of her property or that they, or either of them, did cheat and defraud Mrs. Jacobs; there was no evidence that on that day Mrs. Jacobs was incompetent to execute this deed; and, the vital point, there was no substantial evidence that the signature on this deed was not the signature of Mrs. Jacobs.

The defendants' evidence consisted of the testimony of Clem C. Gove, who, as stated, was the Probate Judge of Osage County, and defendants, Jasper Maples and Nadine Washington.

Mrs. Washington testified that as a result of her contacting Jasper Maples at Mrs. Jacobs' request, the latter sold him the property she owned in Osage County; that on the morning of October 13, 1956, Mrs. Jacobs asked her to go with her and Mr. Maples to Linn, Missouri, to complete the sale; that at Linn they went to the office of Judge Clem C. Gove; that although she was present in Judge Gove's office when Mrs. Jacobs signed this deed, she did not actually see her affix her signature; but, that it was Eva Jacobs who signed this deed in Judge Gove's office that morning.

Jasper Maples testified that he knew Eva Jacobs; that he took Mrs. Jacobs and Nadine Washington to Linn the morning of October 13, 1956, to complete his purchase of two acres of land owned by Mrs. Jacobs; that he gave her $50 for it and

she handed him the deed; that the deed was signed in Judge Gove's office and that he was standing beside Mrs. Jacobs and watched her sign it and saw Judge Gove take her acknowledgment.

Judge Clem Gove testified that he met Mrs. Jacobs about ten days or two weeks before October 13, having been introduced to her by Judge John Peters at Linn; that Judge Peters had secured the description of this land for Mrs. Jacobs, but was not feeling well and asked him (Gove) to prepare the deed and take the acknowledgment; that he visited with Mrs. Jacobs for a few minutes while she told him of knowledge she had of his grandmother and others; that Mrs. Jacobs told him that she had paid only $25 for this land, that she could not live on it because it had no house, and further that she thought she had best sell it because she was afraid its ownership might affect her continuing to receive an old age pension. He also testified that she was an elderly woman and could not walk too well; that in his opinion she was competent to execute the deed, otherwise he would not have taken her acknowledgment; that she signed this deed in his presence without any assistance; that he knew the person who signed the deed was Mrs. Jacobs because she was so identified by Judge Peters (the record indicates Judge Peters was dead at the time of the trial); that he had no doubts that this person was Eva Jacobs because Judge Peters said it was Mrs. Jacobs.

The testimony of Georgia Edwards that the signature on this deed was not that of her sister, Mrs. Jacobs, has little, if any, value, particularly when we consider that she apparently had not seen her sister's signature for more than 35 years. Nor would the testimony of Mrs. Miller or Mrs. Brown have any probative value on the issue of whether the signature on the deed was that of Mrs. Jacobs. Mrs. Miller, who had seen her aunt on May 30, 1956, said only that she did not think Mrs. Jacobs was in physical condition to sign her name, but she did not fix the time of that condition as being in the month of October of that year. Mrs. Brown merely stated that in her judgment Mrs. Jacobs was not physically able to use her hands to write in October, 1956. To compare with this somewhat vague and indefinite testimony we have the positive statements of Judge Gove and Mrs. Washington, disinterested witnesses, that it was Mrs. Jacobs who was present and signed the deed to Maples in Judge Gove's office the morning of the date of the deed. Mrs. Washington also testified that Mrs. Jacobs was able to "get about the house" and "able to use her hands" during 1956; that she "undressed herself" and "fed herself." We characterize Mrs. Washington as a disinterested witness although she was a defendant, because she had nothing to lose should the plaintiffs prevail; on the contrary, she could conceivably have gained by that result for, according to the record, she was a daughter of a deceased sister of Mrs. Jacobs and as such an heir.

After a careful review of the record we are convinced that the plaintiffs have wholly failed to meet the standard of evidence required. We have reached the inescapable conclusion that the finding and decree of the chancellor is against the weight of the credible evidence.

The plaintiffs have filed a motion to dismiss the appeal because defendants' brief does not comply with Civil Rule 83.05(c) V.A.M.R. The violation is not so flagrant as to compel a dismissal. The motion is overruled.

The judgment is reversed and the cause remanded with directions that the court enter a decree for the defendants.

All concur.